**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION | ) | |
| OF ILLINOIS, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Case No. 75 C 3295 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| CITY OF CHICAGO, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

The American Civil Liberties Union of Illinois ("ACLU") and American Friends Service

Committee ("AFSC")[1] filed a petition to enforce the modified consent decree ("MCD") against

the City of Chicago ("City").  The petition alleges three violations of the MCD: (1) the City

identified AFSC in its 2002 internal audit as the subject of police investigation and infiltration,

(2) the City destroyed documents pertaining to the investigation of AFSC prior to the external

audit, and (3) the City promulgated a policy which allows it to destroy documents related to

police investigations of first amendment activities prior to both internal and external audits under

the MCD.  The ACLU and the AFSC ask this court to grant declaratory and injunctive relief

based on these alleged violations.  They also seek discovery of the remaining documents

concerning the City's investigation of AFSC.  The City has moved to dismiss the petition to

enforce, arguing that the ACLU and AFSC lack standing to bring these claims under Fed. R. Civ.

---

[1]For simplicity, the court sometimes refers to petitioners ACLU and AFSC collectively as
AFSC.

1

P. 12(b)(1) and that they have failed to state claim under Fed. R. Civ. P. 12(b)(6).  ACLU and

AFSC have also filed a separate motion to compel discovery of the investigative file.

I.      **Background**

In 1974 and 1975, two class actions were brought under 42 U.S.C. § 1983 against the

City of Chicago, alleging that the Chicago Police Department was violating class members' First

Amendment rights through its police investigations of alleged subversive activities.  In 1981, the

City agreed to a consent decree which was approved by the district court in 1982.  The original

consent decree imposed detailed restrictions on the Chicago Police Department's investigative

powers.

In 1997, the City moved to modify the consent decree to remove some of these

restrictions, and the Seventh Circuit ultimately held that the decree should be modified.  *Alliance*

*to End Repression v. City of Chicago*, 237 F.3d 799, 802 (7th Cir. 2001).  The court stated:

> The core of the decree, which the City does not seek to modify, forbids
> investigations intended to interfere with or deter the exercise of the freedom of
> expression that the First Amendment protects, and requires the City to
> commission independent periodic audits of the City's compliance with the decree.
> The effect of these provisions is to add the threat of civil and criminal contempt to
> the usual sanctions for infringing civil rights and, through the requirement of the
> audits, to make it easier to detect such infringements.

*Id.* at 800.  Removed from the decree was "a dizzying array of highly specific restrictions on

investigations of potential terrorists and other politically or ideologically motivated criminals."

*Id.*  The MCD was entered by this court in March 2001.  AFSC alleges that the City has violated

the MCD by identifying AFSC as the subject of investigation and by destroying the documents

related to its investigation of AFSC.

**II.    Discussion**

The City has moved to dismiss the petition under Rule 12(b)(1) for lack of standing and

under Rule 12(b)(6) for failure to state a claim.  Standing is "the threshold question in every

federal case." *Warth v. Seldin,* 422 U.S. 490, 498 (1975).  Motions to dismiss based on lack of

standing are considered under Fed. R. Civ. P. 12(b)(1), as an argument that the court lacks

subject matter jurisdiction.  *Mayo v. Lane,* 867 F.2d 374, 378 (7th Cir.1989).  When reviewing a

motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded

factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel,*

66 F.3d 894, 897 (7th Cir. 1995).  For the purpose of determining subject matter jurisdiction, the

court "may properly look beyond the jurisdictional allegations of the complaint and view

whatever evidence has been submitted on the issue to determine whether in fact subject matter

jurisdiction exists."  *Id.*  The burden of proof in a Rule 12(b)(1) issue is on the party asserting

jurisdiction.  *United Phosphorus, Ltd. v. Angus Chemical Co.,* 322 F.3d 942, 946 (7th Cir. 2003).

 In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the

court reviews all facts alleged in the complaint and any reasonable inferences drawn from those

facts in the light most favorable to the plaintiff.  *Marshall-Mosby v. Corporate Receivables, Inc.*,

205 F.3d 323, 326 (7th Cir. 2000).  The court will grant the motion only if it appears that the

plaintiff cannot prove any set of facts that would entitle the plaintiff to relief.  *Conley v. Gibson*,

355 U.S. 41, 45-46 (1957).

A.    Identification of AFSC in the 2002 Audit

In the 2002 internal audit filed in the public record in this case (as required by the MCD),

the City revealed that it had conducted investigations into protest activities associated with the

Trans-Atlantic Business Dialogue.   The report identified an investigation of a group called

Chicago Direct Action Network ("Chicago DAN"), but the auditor determined that officers were

assigned to attend meeting and rallies of other groups, including AFSC.  The auditor stated that

no documentation linked AFSC to Chicago DAN and that no documentation identified a

legitimate police purpose served by investigating AFSC.

    AFSC objects to its identification by name in the 2002 internal audit filed with this court.

A news story was also published in the Chicago Sun-Times in which AFSC was identified as a

subject of the investigation disclosed in the 2002 audit.  Frank Main, *Police Infiltration of*

*Protest Groups Has Civil Rights Activists Fuming*, Chicago Sun-Times, Feb. 19, 2004, at 26.

AFSC alleges that this public disclosure is a violation of the MCD because Paragraph 5 of the

MCD states: "The Board shall not disclose in any manner details that specifically identify any

investigations except as otherwise permitted by law, nor shall it disclose in any manner

information that would . . . constitute an invasion of a person's privacy."

    The City argues that the ACLU and AFSC lack standing to bring these claims.  The

requirements for standing are injury in fact, causation, and redressability.  *See Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).  As to injury in fact, AFSC alleges that the

publication of its name as the subject of investigation "stigmatized the AFSC, thus interfering

with its future protected First Amendment activities."  Petition to Enforce, at 2-3.  AFSC also

alleges that it "has been stigmatized and harmed in its future association with individuals and

other organizations."  Petition to Enforce, at 6.  In response to the motion to dismiss, AFSC

argues that it has suffered an injury because "public disclosure that a particular individual or

group was the subject of a law enforcement investigation is inherently stigmatizing and poses a

4

sufficient threat of imminent harm to association to generate standing."  Response to Motion to

Dismiss, at 9.  AFSC states that its injury is to its reputation as well as to its future associational

rights.  *Id.*

 *Philadelphia Yearly Meeting of the Religious Society of Friends v. Tate*, 519 F.2d 1335

(3d Cir. 1975) is applicable to this case.  In *Tate*, the plaintiffs alleged that the Philadelphia

Police Department disclosed the names of certain groups who were the subject of police

intelligence files on television.  *Id.* at 1337.  The court held that allegations of "tangible

consequences" were not necessary because, when it is publicly disclosed that a group is the

subject of investigation, "the alleged threatened injury, although not concrete, is nonetheless

strikingly apparent."  *Id.* at 1339.  The court held that there was "a resultant danger of [plaintiffs]

sustaining injury" including the possibility that "[t]he mere anticipation of the practical

consequences of joining or remaining with plaintiff organizations may well dissuade some

individuals from becoming members or may persuade others to resign their membership."  *Id.* at

1338-39.

 Additionally, AFSC argues that its identification as the subject of an investigation has

caused an injury to its reputation.  An injury to reputation is a sufficient injury-in-fact to support

standing.  *See, e.g., Meese v. Keene*, 481 U.S. 465, 473 (1987).

 The cases relied on by the City to show that AFSC has not suffered an injury-in-fact are

all distinguishable.  In *Laird v. Tatum*, 408 U.S. 1, 6 (1972), the plaintiffs challenged the Army's

collection of  information about "public activities that were thought to have at least some

potential for civil disorder."  The plaintiffs alleged a chilling effect on the exercise of their First

Amendment rights caused only by the existence of this intelligence gathering program and not

by any specific action by the Army against them.  *Id.* at 3.  The court held that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm."  *Id.* at 13-14.  This is not a case like *Laird* where AFSC is claiming it is chilled by the existence of an intelligence gathering program; instead, AFSC was actually investigated by the Chicago Police Department.  Additionally, AFSC does not allege that it has been chilled by the disclosure of its identity as the subject of an investigation; rather it alleges that it has been "stigmatized and harmed in its future association with individuals and other organizations."  Such allegations are not the type of "subjective chill" addressed by the Court in *Laird*.  *See The Presbyterian Church v. U.S.*, 870 F.2d 518, 522 (9th Cir. 1989).

Another case relied upon by the City, *Gordon v. Warren Consolidated Board of Education*, 706 F.2d 778 (6th Cir. 1983), is distinguishable on the same grounds.  In *Gordon*, an undercover police officer enrolled in a high school, and the purpose of the operation was to reduce drug trafficking.  *Id.* at 779.  After the undercover officer's true identity became known at the school, "[c]lass discussions became stilled, and certain topics were avoided, and students refused to freely express their opinions."  *Id.*  As in *Laird*, plaintiffs were alleging that they were chilled in their speech.  In this case, however, AFSC is alleging that it has been "stigmatized and harmed in its future association with individuals and other organizations."

Finally, in *Wade v. Goodwin*, 843 F.2d 1150, 1151-52 (8th Cir. 1988), the state publicly released a list of "survivalists"[2] which included the plaintiff's name, and the Eighth Circuit held the plaintiff did not have standing.  The court noted, however, that the state did not release the

---

[2]The term "survivalist" included members of groups that the government believed advocated violence, such as the Ku Klux Klan and Aryan Nations.  *Id.* at 1151 n.2.

list voluntarily but instead released it under a Freedom of Information Act request. *Id.* at 1151. The plaintiff also stated that he wanted a "name clearing" hearing and conceded that he could not prove any real damages. *Id.* at 1153. *Wade* is distinguishable from this case both because AFSC is alleging a specific future harm to its associational rights and because the City was not required under any law to disclose the identities of the subjects of investigations. The court finds that the claim based on public disclosure is justiciable, and the motion to dismiss based on lack of standing is denied.

The City also argues that the ACLU and AFSC have failed to state a claim because the identification of AFSC did not violate the MCD. The AFSC has alleged that its First Amendment rights were violated by the disclosure of its identity as the subject of an investigation. AFSC may be able to prove facts consistent with its allegations to show that this disclosure violated the MCD under Paragraph 1a, which prohibits certain First Amendment violations by the City, or under Paragraph 5, which prohibits the Board from identifying any investigations "except as otherwise permitted by law" and from making disclosures that "constitute an invasion of a person's privacy." The motion to dismiss for failure to state a claim is denied.[3]

B.   Document Destruction

AFSC argues that the City violated the MCD by destroying, at least in part, the investigative file concerning AFSC and by promulgating a General Order which allows

---

[3]While the court presumably has most, if not all, of the facts necessary to decide this claim on the merits, AFSC bases some of its arguments on the notice pleading standard, suggesting that some fact discovery may be necessary. If no discovery is necessary, the parties may move for summary judgment on this claim.

7

destruction of documents before the audits under the MCD have been completed.  The City argues that this claim is not justiciable based on lack of standing and ripeness.  Additionally, the City has amended the General Order to prevent document destruction prior to completion of the required audits.  This amendment raises the issue of whether this claim is moot.

Based on the amendment to the challenged General Order, the court finds that this claim is, in part, moot.  The City has amended its General Order to prohibit document destruction until after the requisite internal and external audits have been conducted; this amendment renders the claim for injunctive relief moot.  *See Federation of Advertising Industry Representatives, Inc. v. City of Chicago,* 326 F.3d 924, 930 (7th Cir. 2003) (holding that, where a municipality has repealed or superceded an ordinance during the pendency of litigation challenging that ordinance, an action for injunctive relief is rendered moot unless there is a reasonable expectation that the municipality will reenact the ordinance or one very much like it).

Nevertheless, declaratory relief may still be appropriate should the court find that the City violated the MCD by destroying part of the AFSC investigative file.  AFSC has also indicated that it may seek contempt sanctions.  These types of relief have not been rendered moot as a result of the revised General Order.

The City argues that AFSC lacks standing and that this claim is not ripe because, "[u]ntil an auditor states that he or she is unable, because of this particular document destruction, to make a report (and the Police Board is unable to perform its monitoring and enforcement role), it can only be unsupported supposition that there is a potential problem."  Memorandum in Support of Motion to Dismiss, at 10 (emphasis in original).  The court disagrees.  The City's argument assumes that this court cannot determine whether the City has destroyed documents essential to

the external audit before that audit is actually complete.  Experts opine in federal court about all

manner of future events before they have occurred, and the court sees no reason why this claim

is any different.

Additionally, the court finds, without reaching the merits of AFSC's claim, that implicit

in the MCD's requirement of yearly internal audits and an external audit after five years[4] is the

requirement that the City maintain documents necessary to conduct those audits.  Once discovery

is had, as discussed below, AFSC may be able to prove, consistent with the allegations in the

complaint, that the City violated the MCD and that AFSC suffered harm in its ability to discover

whether the investigation violated its First Amendment rights.  The motion to dismiss this part of

the petition to enforce is granted in part and denied in part.

C.     Discovery

The City has refused to produce at least part of the AFSC investigative file to AFSC

pursuant to an informal request because it argues that the MCD precludes the City from

disclosing information in the auditor's possession to anyone not enumerated in the MCD.

Paragraph 5 of the MCD states that "the auditors shall not disclose any information to anyone

but the Board, the Superintendent of Police, or (upon his request) the Mayor." AFSC asks this

court for an interpretation of the MCD that permits the City's attorneys to review files in the

---

[4]Paragraph 3 of the MCD states: "In each of the next five years, the Superintendent of
Police shall conduct a departmental audit of the Police Department's compliance with this
Decree, and submit copies of the audit report to the Mayor, the Police Board, and this court for
filing as a public record."  Paragraph 5 of the MCD states: "The Chicago Police Board shall also
cause an audit of the City's compliance with the terms of this Decree to be performed by a
national independent public accounting firm within five years of the entry of the order adopting
this modified Decree.  The audit report shall contain a description and evaluation of any conduct
believed by the auditors to constitute a probable violation of the Decree."

possession of the internal auditors and to produce such files to the petitioners' attorneys.

The court declines to adopt AFSC's proposed interpretation.  In general, the MCD's limitation on disclosure of audit files is sound; it keeps investigations secret in part to protect the privacy of those under investigation and in part to protect ongoing investigations.  Rather than adopting a broad interpretation of this provision, a more prudent approach is to require that plaintiffs use judicial process to gain access to documents underlying audit reports, such as was done here, by filing a petition to enforce and a motion to compel.  That way, the court can ensure that documents are disclosed in an appropriate manner (under protective order when necessary) when such disclosure is material and relevant.  The court thus rejects AFSC's proposed interpretation of the MCD, and the motion to dismiss that portion of the petition is granted.

This does not mean, however, that discovery of items in the auditors' possession can never be had.  Discovery of the AFSC investigative file is material and relevant to AFSC's allegations that the partial destruction of that file violated the MCD and material and relevant to possible First Amendment violations arising from the infiltration of the AFSC.  The City has stated that it is willing to produce this file under a protective order.  Memorandum in Support of Motion to Dismiss, at 20 n.10.  A protective order was entered in this case on November 29, 2005, but to date, according to the AFSC, the City has produced only heavily redacted portions of the file.  Therefore, the portion of the petition seeking discovery is granted, and the subsequently filed motion to compel is denied as moot without prejudice.

## III.    Conclusion

For the foregoing reasons, the motion to dismiss is granted in part and denied in part. The portion of the document destruction claim seeking injunctive relief is dismissed.  The court

rejects AFSC's proposed interpretation of the MCD that would allow unfettered disclosure of audit files, and that portion of the petition is dismissed.  The portion of the petition seeking discovery in this case is granted, and the pending motion to compel is denied as moot without prejudice.

ENTER:

_____/s/_____
Joan B. Gottschall
United States District Judge

Dated: March 24, 2006