UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMERICAN CIVIL LIBERTIES UNION )
OF ILLINOIS et al. )
 )
        Plaintiffs, )
 ) Case No. 75 C 3295
    v. )
 ) Judge Joan B. Gottschall
CITY OF CHICAGO et al. )
 )
        Defendants. )
 )

## **MEMORANDUM OPINION AND ORDER**

The defendants City of Chicago et al., (collectively the "City") have moved to dissolve the modified consent decree (the "MCD") entered into between the City and plaintiffs the American Civil Liberties Union (the "ACLU"), American Friends Service Committee ("AFSC"), and various other public interest groups and individuals (collectively the "ACLU plaintiffs"). For the reasons set forth below, the City's motion to dissolve the modified consent decree is denied.

### I. BACKGROUND

In 1974 and 1975, two class actions, later consolidated into the instant case, were filed by the plaintiffs against the City of Chicago. The suits alleged that the Chicago Police Department ("CPD") Intelligence Division "Red Squad's" covert investigations of the plaintiffs' allegedly subversive activities[1] had violated the class members' First

---

[1] As the Seventh Circuit related:
    From the 1920s to the 1970s the intelligence division of the Chicago Police Department contained a unit nicknamed the "Red Squad" which spied on, infiltrated, and harassed a wide variety of political groups that included but were not limited to left- and right-wing extremists. Most of the groups, including most of the politically extreme groups, were not only lawful, and engaged in expressive activities protected by the First Amendment, but also harmless. The motives of the Red Squad were largely political and ideological,

Amendment rights under 42 U.S.C. § 1983. In 1981, the parties agreed to a consent decree imposing detailed restrictions on the CPD's investigative activities; the decree was approved by the court in 1982.

In 2001, the Seventh Circuit held that the consent decree should be modified to remove "a dizzying array of highly specific restrictions on investigations of potential terrorists and other politically or ideologically motivated criminals," but leaving intact the core provisions forbidding "investigations intended to interfere with or deter the free expression that the First Amendment protects." *Alliance to End Repression v. City of Chicago*, 237 F.3d 799, 800 (7th Cir. 2001). Upon remand from the Seventh Circuit, the MCD was entered by Judge Williams on March 23, 2001.

Specifically, the MCD: (1) enjoined the City from "investigating, prosecuting, disrupting, interfering with, or harassing any person for the purpose of punishing or retaliating against that person for engaging in conduct protected by the First Amendment, or for the purpose of preventing them from engaging in such conduct"; (2) required all current and future employees to be served with a copy of the MCD; (3) required the Superintendent of Police to conduct a departmental audit of the CPD's compliance with the MCD during the ensuing five years, the results of which were to be communicated to the Mayor, the Police Board, and the court; (4) directed the Police Board to review the Superintendent's audit annually and report to the Mayor, the Superintendent of Police,

---

though they included a legitimate concern with genuine threats to public order. Demonstrations against U.S. participation in the Vietnam War that climaxed in the disruption of the Democratic National Convention in Chicago in 1968, race riots in Chicago and other major cities in the same period, and the contemporaneous criminal activities of the Black Panthers, the Weathermen, and Puerto Rican separatists, all against a backdrop of acute racial and Cold War tensions, political assassinations (notably of President Kennedy, Senator Robert Kennedy, and Martin Luther King, Jr.), and communist subversion, fueled a widespread belief in the need for zealous police activity directed against political militants.

*Alliance to End Repression v. City of Chicago*, 237 F.3d 799, 801 (7th Cir. 2001)

and the public concerning its findings; and (5) also required an audit of the City's compliance with the terms of the MCD to be performed by a national independent public accounting firm within five years of the MCD's entry. The MCD also added the threats of civil and criminal contempt to the usual sanctions for infringing civil rights and non-compliance with the decree. *Id.* Presently before the court is the City's motion to dissolve the MCD.

## II. ANALYSIS

"Decrees that vest federal district judges with supervisory powers over organs of state or local government are extraordinary, and the goal should be to wind them up as fast as possible rather than to perpetuate them indefinitely…." *U.S. v. City of Chicago*, 870 F.2d 1256, 1259 (7th Cir. 1989). In deciding whether to dissolve a consent decree, a district court must take into account the specific terms of the decree when deciding whether to terminate it. *Dyer v. City of Chicago*, No. 83 C 5376, 1997 WL 308843, at *5 (N.D. Ill. June 3, 1997) (citing *Heath v. DeCourcy*, 992 F.2d 630, 633 (6th Cir. 1993)). Specifically, when looking to dissolve a consent decree, the court should look to: (1) any specific terms providing for continued supervision and jurisdiction over the consent decree; (2) the consent decree's underlying goals; (3) whether there has been compliance with prior court orders; (4) whether defendants made a good faith effort to comply; (5) the length of time the consent decree has been in effect; and (6) the continuing efficacy of the consent decree's enforcement. *Dyer*, 1997 WL 308843, at *5 (citing *Heath*, 992 F.2d at 632).

As an initial matter, the City has stipulated that an order dissolving the consent decree will not deprive the court of jurisdiction to hear the petitions for enforcement of

the MCD that are pending before the court. Alternatively, the City represents to the court that it will not object to an order of dissolution that includes a specific reservation of jurisdiction to adjudicate pending petitions to enforce the MCD. The court finds that even if it were to dissolve the MCD, it will implicitly and explicitly retain jurisdiction to hear the pending petitions to enforce the MCD. Federal courts have inherent power to enforce an injunction via contempt proceedings, even if that injunction has ended the lawsuit. *Shapo v. Engle*, 463 F.3d 641, 644 (7th Cir. 2006). Moreover, the U.S. Supreme Court has noted that when a lower court reserves its power to enforce a settlement, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 378-82 (1996); *see also Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994). The court finds, therefore, that an order dissolving the MCD, but reserving jurisdiction to hear those pending petitions to enforce the MCD, would not deprive the ACLU plaintiffs of possible relief.

The City contends that it has fully complied with the terms of the MCD and that the court's supervisory role should therefore be terminated. Specifically, the City quotes the "quasi-sunset" provision of the MCD, which states that "[u]pon completion of the independent audit called for in this order, and its submission to the court, the court will consider whether further modification or dissolution of this decree is warranted at that time." Def.'s Mot. to Dissolve, Ex. A at 6. The City points to the report submitted by the accounting firm of Deloitte & Touche LLP (the "Deloitte report"), that it claims fully addresses the MCD's requirement of an independent audit. The Deloitte report comprises a single page of conclusory statements establishing that Deloitte has

"examined [the City] management's assertion … that the City of Chicago complied with the April 24 Agreed Order, Judgment and Decree as amended by the March 2, 2001 Consent Decree…." Def.'s Mem. in Supp. of Mot. to Dissolve Ex. B. Accompanying the Deloitte report are four pages of conclusory "management assertions" made by the City management and signed by the Superintendent of Police, the President of the Chicago Police Board, and Corporation Counsel for the City. The Deloitte report states that the examination "was conducted in accordance with attestation standards established by the American Institute of Certified Public Accountants and, accordingly, included examining, on a test basis, evidence about the City of Chicago's compliance with those requirements and performing such other procedures as we considered necessary in the circumstances." *Id.* The Deloitte report concludes that, with the exception of one instance of material noncompliance: "[T]he City of Chicago complied with the aforementioned requirements [of the MCD] during the period from January 1, 2001 to December 31, 2005, in all material respects." *Id.* The material noncompliance in question related to the City's failure to provide a copy of the MCD to existing or new non-CPD employees. The City argues that because the independent audit, as well as the annual CPD internal audits, have been satisfactorily completed and submitted to the court, the time for dissolution is ripe.

Furthermore, the City claims that because the unconstitutional activities that were the subject of the MCD have long since ceased, the MCD has effectively fulfilled its purpose and should be dissolved. The City points to, *inter alia*, *People Who Care v. Rockford Board of Education*, 246 F.3d 1073, 1076 (7th Cir. 2001), in support of their contention that once a decree has achieved its immediate aims it should properly be

dissolved. The City also argues that, for purposes of comity, district courts should promptly relinquish oversight of local governmental functions as soon as the offending behavior ceases.

The ACLU, however, contends that the City has not yet met any of the terms of the MCD and thus the City's motion for dissolution is premature.[2] The ACLU points to the AFSC's petition to enforce the MCD that is pending before the court, alleging that the City violated the MCD by publicly disclosing that the AFSC was the subject of a 2002 police investigation, and further alleges that there was an attempt by the CPD to intentionally destroy documents which the City was required to maintain pursuant to the MCD. Moreover, the petition further alleges that the document destruction prevented the adequate performance of the external audit required by the MCD. In short, the ACLU's petition alleges that the City attempted to cover up (via depriving auditors of necessary documents) a cover-up (via document destruction) of an unconstitutional investigation of the AFSC. The ACLU points to the fact that the court has previously denied the City's motion to dismiss the AFSC's petition to enforce the MCD, finding that if these allegations are proven, then a violation of the MCD occurred.

Moreover, the ACLU contests the adequacy of the Deloitte report as an independent audit. The ACLU points to the fact that the report comprises but a single page, backed by four pages of the City management's assertions related to the City's compliance with the MCD. According to the ACLU, full discovery must be conducted

---

[2] Plaintiff Alliance to End Repression does not oppose the City's motion to dissolve the MCD. Plaintiff AFSC has joined the ACLU's response in opposition only to preserve its right to discovery in connection with the alleged violation of the MCD in connection with the 2002 CPD's investigation of the AFSC. The ACLU seeks discovery in connection with Deloitte's independent audit and in connection with the City's motion to dismiss, which is the only discovery that the City's motion to dissolve opposes. The City claims, therefore, that the AFSC's concern to preserve its discovery rights is not in tension with, and does not comprise an objection to, any position taken by the City in connection with its motion to dissolve.

with respect to the Deloitte report of the City's compliance for the prescribed five-year period.  The ACLU further contends the Deloitte report supplied to the court does not rise to the level of full disclosure of methodology and data underlying the conclusions required for the court to adequately review the MCD.  The ACLU submits no authority concerning the requisite scope of the materials that are required to be submitted to the court, other than an affidavit from Kerry Miller ("Miller"), an attorney cooperating with the ACLU.  Pl.'s Resp. in Opp'n Ex. F.  Miller avers that the statement of conclusions supplied to the court does not provide any basis for an interested party to actually evaluate the City's assertions or Deloitte's conclusions or methodology.  *Id.* ¶ 6.  The ACLU has no basis, at this point, to dispute the accuracy of the Deloitte report's conclusions; rather, it seeks full discovery of Deloitte's work papers to verify the accuracy of the audit.

Finally, the ACLU argues that the City has failed to comply with another of the basic criteria of the MCD: the requirement that all current and newly-hired City employees be issued a copy of the MCD.  This failure was cited in the Deloitte report as being the sole instance of material noncompliance insofar as certain non-CPD City employees failed to receive a copy of the MCD.

With respect to the first factor of the six-factor analysis cited above, the court notes that the MCD provides that after the conditions set forth in the MCD are fulfilled, "the court will consider whether further modification or dissolution of this decree is warranted."  Def.'s Mem. in Supp. of Mot. to Dissolve Ex. A.  Thus, there is in place a provision in the MCD requiring that the court determine at this time whether the MCD should be dissolved or modified.

Second, the underlying goals of the MCD, *viz.*, preventing the organized, systematic and protracted activities of the CPD in infiltrating, disrupting, harassing, and prosecuting various public interest and civil rights organizations, as well as prominent individuals associated with them, appear, at least from what is presently before the court, to have been largely met. As the Seventh Circuit observed some seven years ago when modifying the original consent decree to the version presently before the court:

> The era in which the Red Squad flourished is history, along with the Red Squad itself. The instabilities of that era have largely disappeared. Fear of communist subversion, so strong a motivator of constitutional infringements in those days, has disappeared along with the Soviet Union and the Cold War. Legal controls over the police, legal sanctions for the infringement of constitutional rights, have multiplied. The culture that created and nourished the Red Squad has evaporated. The consent decree has done its job.

*Alliance*, 237 F.3d at 801.[3]

That is not to say that the CPD has not occasionally conducted unlawful investigations that may violate the First Amendment-protected rights of individuals or organizations in Chicago; however, if these instances of unlawful activities are only "temporally limited, … isolated, and very much [ ] situation specific" offenses, then they do not rise to the level of systematic and organized unlawful activity that the MCD was crafted to prevent. *Id.* Therefore, absent evidence of systematic and unlawful activities infringing on the First Amendment-protected rights of the people of Chicago, continuation of the MCD is not warranted.

---

[3] However, the court is mindful of the fact that, in a post-9/11 world, government investigations of the activities of citizens and groups have gained new purchase, with concomitant concerns for the free exercise of civil liberties guaranteed by the Constitution. Although the specific activities by the CPD's disbanded "Red Squad" that gave rise to the original consent decree and the MCD belong to the past, the needs of the people to be protected from organized and systematic surveillance of their lawful activities, as well as from illegal harassment and arrest based upon lawful political associations, remain a source of vital concern to the court and to the country in general.

It is the third factor, *viz.*, whether there has been compliance with prior court orders, which is problematic for the City's motion for dissolution. Paragraph 5 of the MCD requires, in relevant part, that:

> [t]he Chicago Police Board shall also cause an audit of the City's compliance with the terms of this decree to be performed by a national independent accounting firm within five years of the entry of the order adopting this modified Decree. The audit report shall contain a description and evaluation of any conduct believed by the auditors to constitute a probable violation of the Decree. The Police Board may require further investigation of any such possible violations. The audit report, together with any additional findings or recommendations made by the Board, the Superintendent of Police, or the Mayor shall be made public.

Def.'s Mem. in Supp. of Mot. to Dissolve Ex. A. Furthermore, the final clause of the MCD prescribes that:

> Upon completion of the independent audit called for in this order, and its submission to the court, the court will consider whether further modification or dissolution of this Decree is warranted at that time.

*Id.*

The plain language of the MCD therefore contemplates a review of the independent audit by the court prior to modification or dissolution of the decree. The City has failed to meet fully this requirement of the MCD of an independent audit, submitted to the court for review. The Deloitte report, which comprises a one-page conclusory report of its examination of the City management's assertion that the City has complied with the MCD, is meaningless.[4] It is merely the auditor's report of what the City managers asserted. The report provides no information concerning the methodology employed in the "audit" (other than that the methods employed are in accordance with

---

[4] The court contrasts the one-page Deloitte report submitted by the City in this instance with Deloitte's exhaustive "1990 First Amendment Compliance Audit of the City of Chicago," submitted prior to the entry of the MCD; the latter totals 224 pages. Pl.'s Resp. in Opp'n Ex. H.

9

established accounting procedures), nor does it supply any data whatsoever; as far as the court can tell; the report merely parrots the City's "management assertions." Such a "review" does not comply with either the letter or the spirit of the independent audit required by the MCD, and the court cannot perform its prescribed function of reviewer of the audit without anything more than the superficial and unreviewable information submitted by the City. If a proper independent audit of the City's compliance has been performed by Deloitte, the court requires that that audit be submitted in full to the court so that the court can perform its role as reviewer of the audit prior to considering the dissolution of the MCD.

The City appears to have largely complied with the remaining requirements of the MCD, with the exception of its failure to provide certain non-CPD City employees with a copy of the MCD. Although this is a material failure to comply with the terms of the MCD, the question the court must attempt to resolve is whether such noncompliance justifies a continuation of the MCD. Given that the unlawful activities that resulted in the MCD were situated entirely within the CPD, the City's failure to comply with this requirement (only with respect to non-CPD personnel) would not, by itself, justify the continued supervision of local government functions by the court. This is particularly so given the direction by both the U.S. Supreme Court and the Seventh Circuit in the intervening years that the federal judiciary must endeavor to return the control of local governmental activities to local government at the earliest possible time compatible with achievement of the objectives of the decree that transferred that control to the federal courts. *See Alliance*, 237 F.3d at 800; *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378-81 (1992); *Bd of Educ. v. Dowell*, 498 U.S. 237, 248 (1991).

With respect to the fourth factor, viz., whether the City has made a good faith effort to comply with the MCD, the Deloitte report submitted by the City fails to set forth sufficient information for the court to make the required determination.

With respect to the fifth factor, the consent decree, both in its original and modified forms, has had an unusually long lifespan: approximately three decades. This is an extraordinary time for a district court to exert supervisory power over a local government entity. As the Seventh Circuit has noted, the time and culture of the era when the MCD was decreed are past. *Id.* at 800.

In summary, the court believes that the MCD is probably ripe for dissolution. However, absent submission of a complete and detailed independent audit, containing a description of the methods employed as well as the data upon which the audit's conclusions are based, as required by the terms of the MCD, the court cannot exercise its prescribed review of the City's compliance. Since the court cannot perform a meaningful review of the City's compliance based upon the audit submitted in conjunction with its motion to dissolve, the City's motion to dissolve the MCD is denied without prejudice.

### III. CONCLUSION

For the reasons set forth above, the City's motion to dissolve the modified consent decree is denied without prejudice.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 30, 2008