# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AMERICAN CIVIL LIBERTIES UNION, et al.,   )
                                           )
               Plaintiffs,         )
                                           )   Case No. 75 C 3295
       v.                       )
                                         )   Judge Joan B. Gottschall
CITY OF CHICAGO, et al.,             )
                                         )
            Defendants.      )

## MEMORANDUM OPINION & ORDER

In 2001, the parties entered into a Modified Consent Decree ("MCD"). The MCD was dissolved on June 4, 2009. This opinion addresses motions to dismiss eleven petitions to enforce the MCD that were filed before its dissolution by individuals who are not direct parties to this lawsuit.[1] On September 4, 2008, the following individuals filed petitions: (1) Bruce Randazzo (Doc. No. 147); (2) Charles Walker (Doc. No. 149); (3) Terrence Doherty (Doc. No. 151); (4) John Swietczak (Doc. No. 152); and (5) Thomas McDarrah (Doc. No. 154). Defendant the City of Chicago moved to dismiss these petitions on November 21, 2008 (Doc. No. 187). On January 19, 2009, a second wave of petitions was filed. These are on behalf of (6) Patrick McDonough (Doc. No. 197); (7) Avi Yarkony (Doc. No. 198); (8) Bryan Washington (Doc. No. 199); (9) Michael McGann (Doc. No. 200); (10) Steven A. Collier (Doc. No. 201); and (11) Ronald Rockwell (Doc. No. 202). The City has moved to dismiss these petitions. (*See* Doc. No. 223).[2]

---

[1] Another petition brought by Plaintiffs the American Civil Liberties Union ("ACLU") and the American Friends Service Committee ("AFSC") remains pending; a discovery schedule on that petition has been set.

[2] These petitions were filed by attorney Russ Stewart, who does not represent the ACLU or the AFSC.

# I. Background

In 1982 a consent decree was entered which governed certain conduct of the Chicago Police Department ("CPD"), related to the protection of individuals' First Amendment rights. *See Alliance To End Repression v. City of Chi. ("Alliance 1982")*, 561 F. Supp. 537 (N.D. Ill. 1982). Among other things, the original decree grew out of a lawsuit containing allegations relating to the CPD's "Red Squad," which targeted individuals based on their political beliefs and First Amendment activity. *See Alliance to End Repression v. City of Chi. ("Alliance 2001")*, 237 F.3d 799, 801 (7th Cir. 2001).

The original decree was replaced by the MCD in 2001. *See id.* The MCD "forb[ade] investigations intended to impede freedom of expression and require[d] the City to commission independent periodic audits to determine the City's compliance." *Alliance To End Repression v. City of Chicago ("Alliance 2004")*, 356 F.3d 767, 769 (7th Cir. 2004). "The core of the [MCD] . . . forb[ade] investigations intended to interfere with or deter the exercise of the freedom of expression that the First Amendment protects, and require[d] the City to commission independent periodic audits of the City's compliance with the decree." *Alliance 2001*, 237 F.3d at 800.

The MCD prohibited the City from "investigat[ing], prosecut[ing], disrupt[ing], interfer[ing] with, or harass[ing] any person for the purpose of punishing or retaliating against that person for engaging in conduct protected by the First Amendment, or for the purpose of preventing them from engaging in such conduct." MCD 3. The MCD also required either the Superintendent of Police or the Inspector General to investigate allegations of violations that were referred to them by heads of City agencies. In particular, the MCD provided:

> If the [Police] Board, the Superintendent of Police, or the head of any other City Department learns of any probable substantial violation of this Decree, the matter shall be promptly referred to the Superintendent of Police (or, if the matter involves personnel of a City agency other than the Police Department, to the Inspector

General). The Superintendent of Police or the Inspector General, as the case may be, shall cause an investigation to be made and shall report to the Board, the Superintendent, and the head of the agency who made the report the results of the investigation. Where the result of the investigation supports the finding of a violation, the Superintendent or other agency head shall in turn report to the Board what corrective action has been taken, including what disciplinary proceedings have been instituted or completed.

MCD 5–6. The MCD provided that this court would retain jurisdiction to enforce its provisions.

The court expressly retains jurisdiction to enable the parties to the Decree to apply to this court for its enforcement of compliance with the provisions contained herein, and for the punishment of any violation of such provisions. Application to enforce the provisions or to impose punishment for any such violation may be presented to the court by any person affected by the conduct complained of. Prior written notice of all such applications shall be given to counsel for the named parties to this action. Except where emergency relief is sought, seven days written notice shall be given.

MCD 6.

## II. ANALYSIS

### A.    Standard of Review

The City has moved to dismiss the petitions under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Motions to dismiss based on lack of standing are considered under Fed. R. Civ. P. 12(b)(1) as an argument that the court lacks subject matter jurisdiction. *Mayo v. Lane*, 867 F.2d 374, 378 (7th Cir. 1989). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). For the purpose of determining subject matter jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* The

burden of proof in a Rule 12(b)(1) issue is on the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court reviews all facts alleged in the complaint and any reasonable inferences drawn from those facts in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). Claims must have "facial plausibility," which requires a plaintiff to plead "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hecker v. Deere & Co.*, 569 F.3d 708, 710–11 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). However, a complaint need not plead a legal theory, nor allege every fact necessary to establish essential elements of a legal theory. *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997). Only a short and plain statement of the claim is required, so long as the complaint puts defendants on notice of the of the claims and the grounds upon which they rest, along with "some indication . . . of time and place." *Thomson v. Washington*, 362 F.3d 969, 970–71 (7th Cir. 2004). Because all necessary facts need not be pled in a complaint, however, it is possible for a plaintiff to defeat a motion to dismiss by supplementing additional facts, via affidavit or responsive pleading, that are not inconsistent with the complaint. *Albiero*, 122 F.3d at 419; *Walker v. Thompson*, 288 F.3d 1005, 1008 (7th Cir. 2002); *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). However, in light of the recent ruling in *Iqbal* requiring facial plausibility in the complaint itself, any material facts presented for the first time in a response to a motion to dismiss will need to be incorporated into an amended complaint.

The City raises three bases to dismiss the pending petitions. First, the City contends that only the named parties to the MCD, the American Civil Liberties Union ("ACLU") and the American Friends Service Committee ("AFSC"), have standing to enforce violations of the MCD.

Second, each petitioner is seeking an order requiring the Inspector General to cease investigating his individual complaint, which the City contends is not permissible under the MCD. Third, the City argues that the individual complaints do not suggest a plausible MCD violation. These arguments will be considered in turn.

**B.     Standing of Non-Parties**

The City's argument that only named parties to the MCD may enforce it stems from this court's ruling on a petition brought by Victor Crown, which was dismissed on January 11, 2006. Crown argued that certain documents he requested under Illinois' Freedom of Information Act were scheduled to be destroyed, and he sought to bar their destruction. Crown's petition was dismissed for lack of standing. The court stated, "The MCD limits this court's continuing jurisdiction to claims brought by 'parties to the Decree.' Since Mr. Crown is not a party to the MCD, he is not properly before the court, and his motions are denied." Jan. 11, 2006 Order (Doc. No. 59).

This statement was in error, although the result was correct. Crown did lack standing, but only because the claim he was presenting did not fall within the protections of the First Amendment. Indeed, this was the argument advanced by the City in its brief seeking dismissal. *See* Resp. of Def. City of Chi. to Mot. of Victor Crown to Enforce 4 (Doc. No. 39). The MCD states that "[t]he court expressly retains jurisdiction to enable the parties to the Decree to apply to this court for its enforcement of compliance with the provisions contained herein, and for the punishment of any violation of such provisions." MCD 6. This sentence mentions only the named parties, but the very next sentence continues, "Application to enforce the provisions or to impose punishment for any such violation may be presented to the court *by any person affected by the conduct complained of*." MCD 6 (emphasis added). This clause envisions that petitions will be brought by non-parties, so long as they are affected by the violation of the MCD. The same section of the MCD requires that

non-party petitioners must give notice to the named parties, which would make sense only if they are permitted to file a petition on their own behalf. *Id.*

This court has permitted non-parties to bring petitions in the past. The original consent decree contained nearly identical jurisdictional language, *see Alliance 1982*, 561 F. Supp. at 570, and non-party Raymond Risley was permitted to petition to enforce the original consent decree. *See Alliance to End Repression* v. *City of Chi. ("Alliance 2000")*, Nos. 74 C 3268, 75 C 3295, 2000 WL 1368004 (N.D. Ill. Sept. 21, 2000) (resolving petition brought by non-party Raymond Risley on the merits). The Seventh Circuit has indicated this approach is correct. In denying attorneys' fees to the named parties in 2004, it explained that the MCD "provide[s] a venue and procedural framework for prosecuting discrete claims," and that the aggrieved individuals need not "prosecute [their claims] as independent suits." *Alliance 2004*, 356 F.3d at 771–72.

The resolution of the Crown petition was correct—he lacked standing because the violation he was claiming was not covered by the First Amendment. But the broader proposition that only signatories to the MCD can move to enforce it is in error; this is not what the MCD states, nor is it consistent with the treatment of former petitions. The City's request to dismiss all of the petitions on this basis is denied.

## C.    Investigation by Inspector General

All of the petitions allege that a "*prima facie*" complaint of a First Amendment violation was lodged with the Inspector General, and no response was received. They allege that this inaction violated the MCD. Each petitioner now seeks to *prohibit* the Inspector General from investigating these petitions any further. No such relief can be granted.

The Inspector General was under no obligation to investigate these complaints in the first instance. The MCD required the Inspector General to investigate allegations of violations of the

MCD that were reported to the Inspector General by the "head of any . . . City Department." MCD 5. The MCD also required the head of any City Department who "learns of any probable substantial violation of this [MCD] to promptly refer[]" the issue to the Inspector General. *Id.* Under these circumstances, the Inspector General "shall cause an investigation to be made and shall report to . . . the head of the agency who made the report the results of the investigation." *Id.* Unfortunately for petitioners, this is all the MCD required of the Inspector General. The MCD did not require the Inspector General to respond to complaints made by individuals other than agency heads. Since none of the Petitioners allege that a department head was aware of the alleged MCD violations, nor that a department head asked the Inspector General to investigate any of the petitioners' claims, the Inspector General's inaction did not violate the MCD. Petitioners are without a remedy under the MCD for the Inspector General's inaction. Furthermore, there is nothing in the MCD that suggests this court may prohibit the Inspector General from conducting an investigation of its own choosing.

Each petitioner's request for a writ of prohibition is denied.

**D.    Individual Petitions**

Although the MCD is more protective than the First Amendment, "the First Amendment lies at the heart of the consent decree, and alleged violations of the decree are most analogous to First Amendment violations that would otherwise be actionable under § 1983." *Alliance 2000*, 2000 WL 1368004 at *2. All the claims raised by petitioners assert a theory of First Amendment retaliation, and caselaw interpreting such claims will guide this court's determination of whether the MCD has been violated.[3]

---

[3] The idea that this court, because of the MCD, has become a court that could hear all First Amendment retaliation claims against the City is troubling, especially given the invitation for judicial forum-shopping that it creates, but the broad injunctive language of the MCD appears to authorize exactly this.

To establish a First Amendment retaliation claim, each petitioner must show (1) that he engaged in activity protected by the First Amendment; (2) that he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) that the First Amendment activity was "at least a motivating factor" in the City's decision to take the retaliatory action. *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (citations omitted).

1.    Petition of Bruce Randazzo

Randazzo's  petition states that he suffered "DISCRIMINATORY treatment on allocation of overtime," but it provides no information regarding how his alleged conduct was protected by the MCD or how the discriminatory was retaliatory. Randazzo Pet'n 2 (Doc. No. 147).  In his response to the City's motion to dismiss, Randazzo argues that he filed a federal lawsuit against the City, and that he was given only "minimal" overtime as a result of having filed the lawsuit. Pet'rs' Combined Reply Br. (hereinafter "Pet'rs' Jan. 8, 2009 Resp. Br.") 3 (Doc. No. 194).  These allegations are taken as true at this stage, and as pled they constitute a basic First Amendment retaliation claim. *See Albiero*, 122 F.3d at 419 (permitting consideration of facts in response brief to motion to dismiss that are consistent with original pleading).  The First Amendment protects one's right to petition the government for redress of grievances by filing a (nonfrivolous) lawsuit. *Bill Johnson's Rest., Inc. v. NLRB*, 461 U.S. 731 (1983); *Geske & Sons, Inc. v. NLRB*, 103 F.3d 1366, 1375 (7th Cir. 1997). Randazzo alleges that in retaliation for engaging in this protected activity, he was given only "minimal" overtime.  Randazzo has stated a sufficient claim for this stage.  However, Randazzo will have to amend his petition to include these additional factual allegations.

Randazzo seeks monetary damages related to the retaliation, although he errantly requests a "writ of mandamus."  No such writ is appropriate, but Randazzo will be permitted to seek monetary relief on the basis of the alleged First Amendment retaliation.  The City's motion to

dismiss is denied. However, Randazzo's petition is dismissed without prejudice to his filing an amended petition within twenty-one days that incorporates the facts presented in his response brief. If an amended petition is not filed within twenty-one days, the dismissal will be with prejudice.

2.    Petition of Charles Walker

Walker's petition states that the City "based a disciplinary action against me on [First] Amendment activity" related to an article in the Chicago Sun-Times that was printed on August 13, 2006. Walker Pet'n 1 (Doc. No. 149). In his response to the City's motion to dismiss, Walker further explains that he had been employed as an inspector with the City Department of Buildings, and he was terminated in October 2006 as a result of being quoted in the Chicago Sun-Times article. Pet'rs' Jan. 8, 2009 Resp. Br. at 3. These facts establish a claim for retaliation. He alleges he engaged in protected activity and he was terminated as a result.

The City contends in a footnote that this claim is untimely under the court's previous ruling that a two-year statute of limitations applies to violations of the MCD. *See Alliance 2000*, 2000 WL 1368004 at *1 (borrowing two-year statute of limitations applicable to 42 U.S.C. § 1983). This argument is in error, for the City focuses on the wrong date. Claims accrue on the date of injury. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 688 (7th Cir. 2004). The injury in a retaliation lawsuit is the retaliation, not the underlying free speech which gave rise to the retaliation. The date of termination (October, 2006) is the relevant date, not the date of the article quoting Walker (August, 2006). The petition was filed in September, 2008, and is timely.

The City's motion to dismiss Walker's claim is denied. However Walker's petition is dismissed without prejudice, and he is given twenty-one days to file an amended petition that incorporates the facts presented in his response brief. If an amended petition is not filed within twenty-one days, the dismissal will be with prejudice.

3.     Petition of Terrence Doherty

Doherty's petition states that in 2004 an attorney of the City "obstructed, denied and has defaulted on a request for review of disciplinary action in 2004 and with respect to grievances or medical waivers/claims that were properly submitted to the Department of Water in 2005 and 2006." Doherty Pet'n at 1 (Doc. No. 151). In response to the City's motion to dismiss, Doherty further explains that he "was hospitalized for medical reasons, and was later discharged even though he had submitted proper medical verification." Pet'rs' Jan. 8, 2009 Resp. Br. 4. These allegations do not establish that Doherty engaged in or intended to engage in any First Amendment activity. For the same reason, Doherty has not alleged that any adverse actions taken were intended to impair his First Amendment rights. The City's motion to dismiss Doherty's petition is granted.

4.     Petition of John Swietczak

Swietczak's petition states that a city attorney "denied and obstructed a request for review of disciplinary action in 2004 and 2005 that was improperly imposed in retaliation for [First] Amendment activity." Swietczak Pet'n 2 (Doc. No. 152). Swietczak alleges that he suffered First Amendment "retaliation" after he applied for a District Foreman position in 2001, and that he was "improperly investigated and falsely accused with respect to a scandal in the city's Hired Truck Program in early 2004." *Id.* at 4. In his response to the City's motion to dismiss, Swietczak suggests that he "disclosed abuses" related to the Hired Truck Program and that he was denied a promotion as a result. Pet'rs' Jan. 8, 2009 Resp. Br. 3.

As alleged in his petition, Swietczak was disciplined in 2004 or 2005 for his disclosure of abuses related to the Hired Truck Program. Swietczak filed his petition on September 4, 2008. The petition was filed outside the two-year statute of limitations. *See Alliance 2000*, 2000 WL 1368004 at *1. The City's motion to dismiss Swietczak's petition is granted.

5.    Petition of Thomas McDarrah

McDarrah's petition states that in 2004 an attorney of the City "obstructed, denied and has defaulted on a request for review of disciplinary action in 2004 and with respect to grievances affecting overtime and medical waivers that were properly submitted to the Department of Water" and Department of Water Management.  McDarrah Pet'n 1 (Doc. No. 154).  McDarrah requested that a disciplinary action be reviewed in 2004 and 2005.  *Id.* at 2.  In response to the City's motion to dismiss, McDarrah further elaborates that he was a brick layer foreman for the City Department of Water Management, that he acted as a whistleblower in reporting incompetence in sewer reconstruction, and that he was harassed and discriminated against as a result of this whistleblowing activity.  Pet'rs' Jan. 8, 2009 Resp. Br. at 4.

McDarrah's claims are barred by the two-year statute of limitations.  *See Alliance 2000*, 2000 WL 1368004 at *1.  His petition was filed on September 4, 2008.  The conduct of which he complains occurred in or before 2005.  The City's motion to dismiss McDarrah's petition is granted.

6.    Petition of Patrick McDonough

McDonough's petition alleges that he suffered "malicious prosecution" after "engag[ing] in constitutionally protected [First] Amendment activity."  McDonough Pet'n 2 (Doc. No. 197).  No other details appear in the petition.  In his response, McDonough alleges that he was a whistleblower and that he reported theft of services to his supervisor in 2003 regarding the Hired Truck scandal. Br. of Pet'r/Movants to Mot. of Def. City of Chi. to Dismiss ("Pet'rs Apr. 23, 2009 Resp. Br.") at 3 (Doc. No. 232.  When he was dissatisfied with the response from his supervisor, he reported the information to a reporter of the Chicago Sun-Times.  *Id.*  He claims he was then investigated by the City, suspended, and subjected to various forms of harassment.  At a hearing, he was later reinstated. *Id.*  In his petition, he states that this reinstatement occurred in 2005.  McDonough Pet'n at 3.

McDonough plausibly states a First Amendment retaliation claim. He alleges that he engaged in protected First Amendment activity by speaking to a reporter about a substantial municipal controversy, and that he suffered retaliation as a result. However, the claim is barred by the two-year statute of limitations applicable to violations of the MCD. *See Alliance 2000*, 2000 WL 1368004 at *1. The alleged retaliation occurred before McDonough was reinstated in 2005. He did not file the instant petition until January 19, 2009, well after the two-year window had closed.

The City's motion to dismiss McDonough's petition is granted.

7.    Petition of Avi Yarkony

Yarkony's petition states that he was the victim of "malicious prosecution" by the City of Chicago after he "engaged in constitutionally protected [First] Amendment activity." Yarkony Pet'n 2 (Doc. No. 198). His petition provides no further details. In his response brief, Yarkony takes a new approach, suggesting that he worked in the Department of Water Management, that he was critical of the competency of his supervisor and voiced these criticisms in and after 2005, that he applied for a promotion, but that he was "denied the [promotion] because the interview was rigged, even though [Yarkony] was the most qualified." Pet'rs' Apr. 23, 2009 Resp. Br. 4.

Yarkony has adopted a new factual theory of liability in the response brief; there is no suggestion of "malicious prosecution" in his response brief, nor is there any suggestion in his petition that he was denied a job opportunity because of free speech activity. These factual allegations are not consistent, and the allegations appearing in the response will therefore not be considered. *See Albiero*, 122 F.3d at 419. Yarkony's petition, standing alone, fails to state a claim for First Amendment retaliation because it merely contains legal conclusions.

The City's motion to dismiss Yarkony's petition is granted.

8.     Petition of Bryan Washington

Washington's petition states that he was the victim of "malicious prosecution" by the City of Chicago after he "engaged in constitutionally protected [First] Amendment activity." Washington Pet'n 2 (Doc. No. 199). No details of the basis for this claim are provided in the petition. Nor is the basis of his petition explained in his responsive filing. *See* Pet'rs' Apr. 23, 2009 Resp. Br. 5.

Washington has failed to provide sufficient notice of his claim. The City's motion to dismiss his petition is granted.

9.     Petition of Michael McGann

McGann's petition claims that he was subjected to a "retaliatory administrative proceeding" as a result of his engaging in a whistleblowing activity related to the Safe Drinking Water Act. McGann Pet'n 2 (Doc. No. 200). In his response brief, McGann explains that in 2007, he was working at the Jose de Diego public school and discovered dangerous and hazardous plumbing and water problems. Pet'rs' Apr. 23, 2009 Resp. Br. at 3. He reported this first to his supervisor, and then to the principal of the school, who relayed the information to a newspaper. After the story was reported, McGann was suspended for 18 days.

The City responds that this claim is precluded by the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), where the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

This holding applies only if McGann make these statements "pursuant to [his] official duties." At this stage, the court is unaware of McGann's official duties, and cannot dismiss his petition on this basis.

The City's motion to dismiss McGann's petition is denied. However McGann's petition is dismissed without prejudice, and he is given twenty-one days to file an amended petition that incorporates the facts presented in his response brief. If an amended petition is not filed within twenty-one days, the dismissal will be with prejudice.

### 10. Petition of Steven Collier

Collier's petition states that an attorney for the City's Department of Water "obstructed a request for review of disciplinary action in 2006 . . ." Collier Pet'n 1 (Doc. No. 201). He claims the attorney withheld "exonerating evidence" and obstructed his efforts to obtain a review of the disciplinary decision. *Id.* at 2. In his response brief, Collier adds that he was "critical of operations in the department," and was "terminated in September 2006." Pet'rs' Apr. 23, 2009 Resp. Br. at 4.

To the extent that Collier could state a claim, it is barred by the two-year statute of limitations, which would have begun running no later than the date of his termination in September, 2006. *See Alliance 2000*, 2000 WL 1368004 at *1. Collier filed his petition on January 19, 2009. The City's motion to dismiss Collier's petition is granted.

### 11. Petition of Ronald Rockwell

Rockwell's petition states that he was the victim of "malicious prosecution" by the City of Chicago after he "engaged in constitutionally protected [First] Amendment activity." Rockwell Pet'n 2 (Doc. No. 202). No details of the basis for this claim are provided in the petition. Nor is the basis of his petition explained in his responsive filing. *See* Pet'rs' Apr. 23, 2009 Resp. Br. 4.

Rockwell has failed to provide sufficient notice of his claim. The City's motion to dismiss Rockwell's petition is granted.

### III. Conclusion

The City's motion to dismiss filed on November 21, 2008, is granted in part and denied in part. The petitions of Terrence Doherty, John Swietczak, Thomas McDarrah are dismissed. The petitions of Bruce Randazzo and Charles Walker survive the City's motion, but are dismissed without prejudice to filing an amended petition within twenty-one days. If an amended petition is not filed, the dismissal will be with prejudice.

The City's motion to dismiss filed on March 30, 2009, is granted in part and denied in part. The petitions of Patrick McDonough, Avi Yarkony, Bryan Washington, Steven A. Collier, and Ronald Rockwell are dismissed. The petition of Michael McGann survives the City's motion, but is dismissed without prejudice to filing an amended petition within twenty-one days. If an amended petition is not filed, the dismissal will be with prejudice.

ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 31, 2009