# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 75 C 3295<br>)<br>) Judge Joan B. Gottschall |
| CITY OF CHICAGO et al., | )<br>) |
| Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

In 1974 and 1975, the American Civil Liberties Union ("ACLU") and other public interest groups brought two class actions arising from the City of Chicago (the "City") Police Department intelligence division's covert investigation of plaintiffs' purportedly subversive activities, which investigations, plaintiffs maintained, violated their First Amendment rights. The two cases, which were consolidated, resulted in the 1982 entry of a consent decree restricting the investigative techniques employed by the City, and granting the court jurisdiction to enforce compliance with the decree. *See Alliance to End Repression v. City of Chicago* (*Alliance 1982*), 561 F. Supp. 537 (N.D. Ill. 1982). Nearly twenty years later, after an appeal to the Seventh Circuit, *see Alliance to End Repression v. City of Chicago* (*Alliance 2001*), 237 F.3d 799 (7th Cir. 2001), this court entered a Modified Consent Decree ("MCD")[1] to replace the original consent decree. The MCD enjoined the City from, *inter alia*, retaliating against any person on the basis of conduct protected by the First Amendment. (MCD 3.) In June 2009, this court

---

[1] The MCD is located at Doc. 3335 in *Alliance to End Repression et al. v. City of Chicago et al.*, No. 74 C 3268 (N.D. Ill. Mar. 23, 2001), with which this case has been consolidated.

entered an order dissolving the MCD, but retaining jurisdiction "over all pending petitions to enforce" the MCD. (Doc. 253.)

On July 31, 2009, the court issued an opinion (the "Opinion") on several such pending petitions brought by non-parties to the MCD. *See ACLU v. City of Chicago*, No. 75 C 3295, 2009 WL 2409907 (N.D. Ill. July 31, 2009); Doc. 271. The City challenged the standing of those non-parties to bring petitions to enforce the MCD; the court rejected this argument, finding that the MCD unambiguously conferred standing on "*any person affected by the conduct complained of*." *ACLU*, 2009 WL 2409907, at *3-*4 (quoting MCD) (emphasis in Opinion). To bring a valid petition, the court held, each such person must state a claim that the City retaliated against him for his exercise of his First Amendment rights in violation of the MCD. *Id.*, at *4. Of particular relevance here, the court dismissed the petition of John Swietczak with prejudice and dismissed the petitions of Bruce Randazzo, Charles Walker, and Michael McGann without prejudice. *Id.*, at *5-*8.[2]

After his petition was dismissed with prejudice, Swietczak moved the court to reconsider its ruling. (Doc. 290.) Pursuant to the court's instructions in the Opinion, Randazzo, McGann, and Walker all filed amended petitions (Docs. 292, 293, 294), which the City moved to dismiss (Doc. 304-2).

## I. ANALYSIS

Swietczak's and the City's motions, and the amended petitions, are now before the court, which addresses each motion in turn.

---

[2] For further history of this extensive case, *see ACLU v. City of Chicago*, No. 75 C 3295, 2008 WL 4450304, at *1-*2 (N.D. Ill. Sept. 30, 2008) *and ACLU*, 2009 WL 2409907, at *1-*2.

### A. Swietczak

Swietczak seeks reconsideration pursuant to Federal Rule of Civil Procedure 60(b) of the court's ruling that his petition was time-barred. In its Opinion, the court stated as follows with respect to Swietczak's petition:

> Swietczak's petition states that a city attorney "denied and obstructed a request for review of disciplinary action in 2004 and 2005 that was improperly imposed in retaliation for [First] Amendment activity." Swietczak Pet'n 2 (Doc. No. 152). Swietczak alleges that he suffered First Amendment "retaliation" after he applied for a District Foreman position in 2001, and that he was "improperly investigated and falsely accused with respect to a scandal in the city's Hired Truck Program in early 2004." *Id.* at 4. In his response to the City's motion to dismiss, Swietczak suggests that he "disclosed abuses" related to the Hired Truck Program and that he was denied a promotion as a result. Pet'rs' Jan. 8, 2009 Resp. Br. 3.
>
> As alleged in his petition, Swietczak was disciplined in 2004 or 2005 for his disclosure of abuses related to the Hired Truck Program. Swietczak filed his petition on September 4, 2008. The petition was filed outside the two-year statute of limitations. The City's motion to dismiss Swietczak's petition is granted.

*ACLU*, 2009 WL 2409907, at *6 (citing *Alliance to End Repression v. City of Chicago* (*Alliance 2000*), Nos. 74 C 3268 & 75 C 3295, 2000 WL 1368004, at *1 (N.D. Ill. Sept. 21, 2000) (imposing two-year limitations period on petitions)). In his motion for reconsideration, Swietczak does not assert that the summary above erroneously described the allegations in his petition or those proffered in his response to the motion to dismiss. Instead, he asserts for the first time in the motion for reconsideration that he expressed concerns to the Federal Bureau of Investigation and the City of Chicago Inspector General about a litany of issues at the City (all unrelated to the Hired Truck Program, the basis of his earlier allegations), and that he suffered retaliation in March 2008, well within the limitations period. (*See* Doc. 290.)

Rule 60(b) allows reopening of a judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In his motion, Swietczak does not cite any circumstance enumerated under Rule 60(b) that would justify the relief he requests. In reply, he contends only that the court should reopen the judgment because of "mistake or inadvertence," tracking the language of Rule 60(b)(1). However, he provides no explanation of how the circumstances of his case justify relief under Rule 60(b)(1), and cites no case on point.

As the Seventh Circuit has stated repeatedly, "'Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1).'" *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir. 1986) (quoting *Ben Sager Chems. Int'l v. E. Targosz & Co.,* 560 F.2d 805, 809 (7th Cir.1977)); *see also McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (quoting *Kagan*). The court has also noted that Rule 60(b) is an "extraordinary remedy" and that "[t]he rule was designed to address mistakes attributable to special circumstances . . . ." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Swietczak has provided no explanation of why the circumstances presented here are special.

Rather, his motion simply raises new allegations that fall within the two-year limitations period. All of the newly proffered facts concern retaliation that Swietczak allegedly suffered both before Swietczak filed his *pro se* petition in September 2008 (*see* Doc. 152), and before he, through counsel, filed his response to the City's motion to dismiss, in which he proffered new allegations not stated in the petition (*see* Doc. 194). Swietczak either was fully aware of these newly presented facts at the time he made the previous filings or, at the very least, could have discovered such facts through the exercise of reasonable diligence. A motion for reconsideration under Rule 59(e) is not a proper vehicle to present allegations that could have been presented earlier, *DalPozzo v. Basic Mach. Co.*, 463 F.3d 609, 615 (7th Cir. 2006); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995), and Rule 60(b), the basis for Swietczak's motion, imposes a higher standard than Rule 59(e) does, *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1166 (7th Cir. 1995).[3] Swietczak's newly raised allegations could have been raised before his petition was dismissed and so cannot revive his petition now.

Swietczak's motion is therefore denied.[4]

---

[3] Swietczak briefly argues in reply that the court's dismissal of his petition was not a final judgment. Switczak may be attempting to argue that a lower standard than that applicable under Rule 60(b) governs his motion. If so, his argument is undeveloped. In any case, it is unavailing. Even if this motion were properly analyzed under Rule 59(e) rather than 60(b) (*but see* Doc. No. 271 (entering judgment on Swietczak's petition)), it simply raises new allegations that could have been raised earlier, and fails on that basis as stated above.

[4] On May 13, 2010, nearly five months after briefing was completed on his original motion for reconsideration, Swietczak filed an amended motion for reconsideration, which is, in substance, an additional motion for reconsideration, as it raises still-newer arguments for reconsideration. (*See* Doc. 316.) In his amended motion, Swietczak argues that he was not served with the MCD until August 7, 2007, and that the limitations period for his petition should be tolled accordingly, making his September 2008 petition timely. Swietczak, who is represented by counsel, has not noticed for presentment this amended motion for reconsideration as required by local rule. *See* L.R. 5.3(b). Swietczak must re-file the motion and notice it for a day and time at which the court hears motions. At that point, the court will take appropriate action. Until then, the motion is denied without prejudice for failure to prosecute. *See* L.R. 78.2.

**B.     City's Arguments as to Petitioners Randazzo, Walker, and McGann**

In its Opinion, the court dismissed without prejudice the petitions of Randazzo, Walker, and McGann, each of whom had failed to state a claim for retaliation by the City. However, each petitioner raised allegations in response to the City's motion to dismiss that, had the allegations been included in his petition, might have stated a claim for retaliation. Consequently, the court allowed these three petitioners to file amended petitions, which they have done. (*See* Docs. 292, 293, 294.) The City filed a motion to dismiss the petitions which attacks the amended petitions, first, on several issues common to the three petitions, then, on issues regarding each of the petitions individually. The court addresses each of the City's arguments in turn.

   1.   Jurisdiction over Non-Party Petitions

The City first argues that this court lacks jurisdiction to entertain the amended petitions because the MCD provides the court with jurisdiction to hear the petitions only of parties. The City previously raised this argument, which the court rejected in its Opinion. *See ACLU*, 2009 WL 2409907, at *3-*4. Specifically, the court interpreted the MCD as follows:

> The MCD states that "[t]he court expressly retains jurisdiction to enable the parties to the Decree to apply to this court for its enforcement of compliance with the provisions contained herein, and for the punishment of any violation of such provisions." MCD 6. This sentence mentions only the named parties, but the very next sentence continues, "Application to enforce the provisions or to impose punishment for any such violation may be presented to the court *by any person affected by the conduct complained of.*" MCD 6 (emphasis added). This clause envisions that petitions will be brought by non-parties, so long as they are affected by the violation of the MCD.

*Id.*, at *3. The City urges that the quoted MCD clauses establish that persons affected by complained-of conduct can bring petitions to enforce the MCD only with the consent of

6

one of the parties. Such an interpretation finds no support in the MCD, and was previously rejected in the Opinion. The court sees no reason to revisit its prior ruling.[5]

       2. False Claims Act

The City also argues that the court has no jurisdiction over certain claims brought by petitioners pursuant to the City's False Claims Act. Each of the amended petitions asks for "damages under the False Claims Act . . . ." (*See* Doc. 292 at 6; Doc. 293 at 6; Doc. 294 at 6.)

The court need not decide the City's jurisdictional argument because, as the City argues, petitioners fail to state False Claims Act claims on which relief can be granted. Private individuals seeking to bring claims under the False Claims Act must, *inter alia*, bring such claims (a) in the name of the City and the private individuals bringing the suit, and (b) against City contractors. *See* Mun. Code of City of Chi. § 1-22-030. Petitioners here bring these claims *against* the City, and do not name anyone identified as a City contractor as a defendant. Moreover, petitioners do not allege any conduct that violates the False Claims Act, which largely concerns financial harm to the City perpetrated by false claims. *See id.* § 1-22-020. The False Claims Act plainly does not apply to the claims asserted by Randazzo, Walker, and McGann, and the Court accordingly dismisses the amended petitions to the extent that they seek to assert claims under the False Claims Act.

---

[5] The City also maintains that this court should relinquish jurisdiction over the amended petitions based on a footnote in the Opinion in which the court expressed concern that the MCD might bring all First Amendment retaliation claims against the City before this court. *ACLU*, 2009 WL 2409907, at *4 n.3. Upon dissolution of the MCD, the court retained jurisdiction only over petitions that were then pending. In its Opinion, the court dismissed several pending petitions, leaving just the non-party petitions of Randazzo, Walker, and McGann. Any petitions filed after the date of dissolution of the MCD would not have been pending at the time of the dissolution, meaning that the court's remaining jurisdiction in this case includes only the three individual petitions now pending (in addition to another petition filed by the ACLU). This limited number of pending petitions is not so great as to raise the concerns expressed by the court.

3. <u>Damages</u>

Further attacking the amended petitions of Randazzo, Walker, and McGann, the City argues that the MCD does not allow the recovery of damages, but rather only declaratory and injunctive relief. The City bases this argument on the change between the original consent decree and the MCD. The relevant part of the original consent decree stated:

> A. *Retention of Jurisdiction by the Court.* Jurisdiction is retained by the Court for the following purposes.
>
> 1. To enable the parties to this Order to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Order, for the enforcement of compliance with the provisions contained herein, and for the punishment of the violation of any such provisions. Application to enforce such provisions or to impose punishment for any such violation may be presented to this Court by any person affected by the conduct complained of. . . .
>
> 2 For the trial and adjudication of the damage claims against the City defendants.

*Alliance 1982*, 561 F. Supp. at 570. The MCD, by contrast, describes the court's retained jurisdiction as follows:

> RETENTION OF JURISDICTION
>
> The court expressly retains jurisdiction to enable the parties to the Decree to apply to this court for the enforcement of compliance with the provisions contained herein, and for the punishment of any violation of such provisions. Application to enforce the provisions or to impose punishment for any such violation may be presented to the court by any person affected by the conduct complained of.

(MCD 6.) In short, the MCD makes no mention of the trial and adjudication of damage claims against the City. Petitioners argue that the MCD "supplements" the original consent decree, rather than superseding it. However, if the MCD merely supplemented

the original consent decree, the parties would not have repeated in the MCD many of the terms that are identical in the two decrees, such as the above-quoted paragraph from the MCD, which tracks its predecessor in the original consent decree nearly verbatim.

Moreover, an argument that the MCD merely supplements the original consent decree ignores the history of this case. In 2001, the City appealed the denial of its motion to modify the original consent decree. The Seventh Circuit reversed, finding first that the City was no longer engaging in the wrongful conduct–the City Police Department's wrongful investigation of political dissidents–that justified the strictures of the original consent decree, and second that the modification of the original consent decree was necessary to allow for greater investigatory latitude. *Alliance 2001*, 237 F.3d at 802. On remand, this court entered the MCD which, pursuant to the Seventh Circuit's instructions, relaxed the strictures of the original consent decree. Given this history, if the MCD were merely a supplement to the original consent decree, it would specifically set forth which excessively restrictive terms of the original consent decree were stricken by the entry of the MCD. Instead, the MCD sets forth terms that largely repeat selected paragraphs from the original consent decree. As petitioners concede, a consent decree "is to be interpreted strictly in accordance with its own language . . . ." *Sealy Mattress Co. of Mich. v. Sealy, Inc.*, 789 F.2d 582, 585 (7th Cir. 1986) (collecting cases). Absent any language allowing the recovery of damages, the court cannot award damages for a successful petition to enforce the MCD. Therefore, the amended petitions' requests for damages are stricken.[6]

---

[6] In its Opinion, the court noted that Randazzo could seek damages. *See ACLU*, 2009 WL 2409907, at *5. At that point, the parties had not briefed the issue of whether damages were recoverable under the MCD. On the basis of the fuller briefing now before the court, the MCD clearly does not permit such recovery.

9

4. *Monell*

The City argues that the amended petitions of Randazzo, Walker, and McGann fail to state a municipal policy and are therefore not actionable. The basis of the City's argument is *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978), which holds that municipalities such as the City "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. This court has previously analogized claims under the consent decree to § 1983 claims, but it also has noted that "the fit is not perfect." *See Alliance 2000*, 2000 WL 1368004, at *2. This case diverges from typical § 1983 claims on the issue of municipal liability. The instant petitions arise from alleged violations of the MCD, to which the City is a party, and which specifically bars agents of the City from retaliating based on a person's exercise of his First Amendment rights. (MCD 3.) In petitions to enforce the MCD, the City, not its agents, is the proper party-defendant. *See Wrozek v. City of Chicago*, 906 F.2d 1180, 1184 (7th Cir. 1990) (rejecting similar argument regarding *Shakman* decrees and stating that "the only conceivable function of having the City bind itself was to be answerable for the deeds of its employees."). At this early stage, the City cannot disclaim responsibility for its agents' violations of the MCD.

**C.   City's Arguments as to Randazzo, Walker, and McGann**

The City also seeks dismissal of the amended petitions based on asserted defects in each amended petition. As stated in the Opinion, an actionable petition must set forth a claim for retaliation for the exercise of the petitioner's First Amendment rights. An actionable claim for retaliation requires that each petitioner allege that: (1) he engaged in

activity protected by the First Amendment; (2) he suffered a deprivation likely to deter First Amendment-protected activity in the future; and (3) the protected activity caused the deprivation. *See George v. Walker*, 535 F.3d 535, 538 (7th Cir. 2008).

To have engaged in activity protected by the First Amendment, a petitioner must have engaged in activity "as a citizen" (*i.e.*, not pursuant to the petitioner's duties of employment) and "on a matter of public concern." *Spiegla v. Hall*, 481 F.3d 961, 965 (7th Cir. 2007); *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951 (2006). The Supreme Court has noted that First Amendment retaliation claims arise in an "enormous variety of fact situations," and that each claim requires a balancing of a government employer's need for "a significant degree of control over [its] employees' words and actions," the employee's constitutional right to speak as a citizen, and the public's interest in an "informed, vibrant dialogue" on issues of public concern. *Garcetti*, 547 U.S. at 418-19. Relevant considerations in determining whether a public employee's speech was made as a citizen or as an employee include whether the speech: was expressed inside the workplace; concerned a matter of employment; and was made pursuant to the employee's duties. *Id.* at 420-21. Public employees who speak pursuant to their official duties speak as employees, not citizens. *Spiegla*, 481 F.3d at 965. In determining whether the speech was a matter of public concern, courts are instructed to inquire whether the speaker intended to remedy only a private wrong, *see Bivens v. Trent*, 591 F.3d 555, 560-61 (7th Cir. 2010), or to notify the public of a "matter of political, social, or other concern to the community." *See Connick v. Myers*, 461 U.S. 138, 146, 130 S. Ct. 1684 (1983)

Regarding the third element, the Seventh Circuit has recently redefined the requisite causal link between the protected activity and the deprivation. At the time of *George* (and this court's prior Opinion), the protected activity was required to be "at least a motivating factor" in the retaliation. *George*, 535 F.3d at 538. However, shortly after the Opinion, the Seventh Circuit, relying on recent Supreme Court precedent, held that the causation required to support a First Amendment retaliation claim is "but-for causation." *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) (citing *Gross v. FBL Fin. Servs., Inc.*, --- U.S. ----, 129 S. Ct. 2343 (2009)). But-for causation means, "The cause without which the event could not have occurred." *See* Black's Law Dictionary (8th ed. 2004); *see also James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 387 (7th Cir. 2009) (noting that "but for," construed "literally," means "a condition that had to exist for the event in question to occur"). The court considers this heightened standard of causation in evaluating the amended petitions.

1. Randazzo

Randazzo's amended petition sets forth allegations that fall into three categories. In the first category, Randazzo alleges that he filed suit against the City in 2004, a suit which he lost on summary judgment. (Doc. 292 ¶ 3.) After the filing of his suit, he allegedly no longer received overtime that he had received prior to filing his lawsuit. (Doc. 292 ¶¶ 4-5.) Randazzo's allegations do not set forth specific dates that he was subject to retaliation, leading the City to argue that his claims either are time-barred or lack but-for causation. Stated differently, Randazzo's claimed retaliation may have come soon enough after the 2004 filing of his suit that the suit could have caused the retaliation, in which case his claims accrued many years ago and are time-barred; alternatively, the retaliation occurred in September 2006 or later and within the

limitations period, in which case it occurred so long after Randazzo filed suit in 2004 that the suit could not have been the but-for cause of the retaliation. It is possible that retaliatory events began in time to suggest causation and continued long enough to fall within the statute of limitations, but Randazzo's allegations do not so state.

The 42-month lapse between Randazzo's filing of suit in 2004 and the alleged retaliation, which, he asserts in briefing, occurred in February 2008, is too great, standing alone, to support but-for causation. The Seventh Circuit has held that, even under the less demanding, "motivating factor" causation test, a lapse of "approximately eighteen months" between protected speech and an alleged deprivation renders the two events "simply too remote in time to infer" causation between the two. *Horwitz v. Bd. Of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001). Here, the lapse is more than twice as long, and, as previously explained, the Seventh Circuit has since heightened the necessary causal link between the protected activity and the retaliation. *Fairley*, 578 F.3d at 525. Randazzo has failed to allege events that plausibly could be linked causally.

Randazzo also alleges that he "has been verbally harassed, ridiculed, and disparaged" by his supervisor and other employees, and that he has "suffered retaliation." (Doc. 292 ¶ 7.) Randazzo alleges nothing to support these conclusory allegations, which fall far short of a plain statement of a plausible claim. Randazzo's first group of allegations is dismissed.

In the second category of allegations, Randazzo alleges that "he has filed 20 grievances since 2004, with none having been heard" (*id.* ¶ 6), and that he has been "verbally harassed, ridiculed, and disparaged" by his supervisor and other employees (*id.* ¶ 7). The City argues that these allegations fail to state that Randazzo engaged in First

Amendment activity because his alleged grievances were not "of public concern," *Spiegla*, 481 F.3d at 965, but rather were statements of personal interest. Randazzo fails to respond to the City's arguments regarding this second category of allegations.

The Seventh Circuit has held that an employee's speech is not of "public concern" when it is "addressed only to the personal impact" of potentially public issues and "intended to benefit only [the employee's] personal interests in a private dispute with her employer." *Cliff v. Bd. Of Schm. Comm'rs of City of Indianapolis*, 42 F.3d 403, 409 (7th Cir. 1994). More specific to the allegations in the instant case, the appellate court recently held that a union grievance, filed solely to remedy a private wrong, is not actionable because it is not of "public concern." *See Bivens*, 591 F.3d at 560-61. In *Bivens*, the Seventh Circuit instructed that in determining whether speech is a matter of public concern, the court must look to the plaintiff's motivation in bringing such a grievance. *Id.* The court found that the plaintiff's grievance about lead contamination at the indoor firing range at which he worked pertained only to a private interest even though the lead contamination could have affected others using the range. *Id.* Specifically, the Seventh Circuit analyzed "the context, form, and particular content" of the speech at issue, and found that: the form, *i.e.*, an internal grievance, suggested the concern was personal; the context was the plaintiff's own illness, and not larger problems at the firing range, further suggesting that his concern was personal; and finally, regarding content, the grievance made no reference to larger, more public issues. *Id.* at 561.

Here, Randazzo's allegations largely lack detail, and reveal only the form of his speech which, as in *Bivens*, was a grievance, a form that suggests a private concern.

Neither Randazzo's allegations nor his briefing suggest that the context or the content of his grievance was of public concern. Rather, Randazzo's allegations suggest that he sought to remedy an individual wrong, prior alleged retaliation, and his briefing, as mentioned, is silent on the issue of his grievances. From what Randazzo has pleaded, the court cannot conclude that his grievances were matters of public concern. Therefore, his second group of allegations is dismissed.

Randazzo's third category of allegations states, "Randazzo further communicated his public concern about corruption and favoritism to Channel 2 News, Channel 7-ABC News, and CAN-TV." (Doc. 292 ¶ 8.) In briefing, Randazzo does not offer further allegations shedding light on this communication, and does not respond to the City's argument that this statement was not of public concern.

Even if the Court could conclude that these communications were of public concern, Randazzo does not allege that he suffered any deprivation as a result of these communications. Nor does Randazzo allege that any supervisor was aware of his communications, destroying any causal link that could be inferred from his allegations. Therefore, Randazzo's third group of allegations is dismissed.

Randazzo's amended petition is dismissed.

2. Walker

The City next challenges the petition of Charles Walker, who alleges that he was terminated from his position as a building inspector and later reinstated in 2005, then again terminated in October 2006. The City argues that Walker's allegations regarding his first termination in 2005 are time-barred by the two-year limitations period applicable to petitions in this case. In response, Walker argues that because he brought his petition within two years of his second termination, claims arising from both of the alleged

retaliatory discharges against him are timely. However, Walker suffered an injury when he was discharged in 2005, and, as explained in the Opinion, a claim pursuant to 42 U.S.C. § 1983 accrues on the date of injury. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). Walker filed his original petition in September 2008. (*See* Doc. 149.) Therefore, his claim arising from his 2005 discharge is untimely.

Walker's remaining allegations concern his October 2006 termination. Walker alleges as follows:

> That Walker resumed his position, but was again terminated in October 2006, subsequent to an article in the Chicago Sun-Times on August 13, 2006. Walker had a conversation with staff reporter, Steve Warmbir, in which he explained his public concern about sloppy inspection practices in the Department of Buildings, and told the reporter that his superiors were attempting a "cover-up" and trying to blame him for the porch collapse and fatality. At the hearing on his appeal of termination, City attorney, Dennis Mondero admitted on the record that Walker was fired because he was quoted in the newspaper article.

(Doc. 294 ¶ 5.) Walker attaches the article to his petition.[7]

Initially, Walker's allegations suggest that he spoke on a matter of public concern. Walker's allegations suggest that he spoke to the reporter not pursuant to his official duties, but rather as a citizen. *Garcetti*, 547 U.S. at 421; *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 569-70, 88 S. Ct. 1731, 1735 (1968) ("The statements are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher."). Walker's allegations also suggest that he spoke on a "matter of political, social, or other concern to the community," that is,

---

[7] A motion to dismiss generally allows only the consideration of the complaint; however, an exception to the general rule allows the court to consider matters that are attached to or referred to in the complaint and central to the claims therein. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Walker's allegations make clear the article is central to Walker's petition and attached to it, the court properly considers it here.

corruption in housing inspection practices. *See Connick*, 461 U.S. at 146. There is also no question that Walker suffered a deprivation when he was fired.

The remaining question regards the link between Walker's alleged speech and his deprivation. The court assumes for purposes of resolving the City's motion to dismiss that, as is alleged, the City attorney decided to fire Walker because Walker was quoted in the *Sun-Times* article.[8] Drawing all inferences in Walker's favor, the City attorney could have spoken to either the reporter or Walker, determined that Walker spoke to the reporter about "sloppy inspection practices" and an attempted "cover-up," and then decided to fire Walker. While the City asserts that the City attorney could have relied only on what was reported in the attached article, *i.e.*, that Walker was working for the City, the court finds such an argument inconsistent with the inferences afforded Walker under federal pleading standards.

With respect to his 2006 termination, Walker adequately has alleged a claim for retaliation. However, due to his request for damages, his claim pursuant to the False Claims Act, and his claim arising from his 2005 termination which is not actionable, the court dismisses his petition with leave to re-plead in a manner consistent with this opinion.

    3. McGann

In his petition, McGann alleges that he is a plumbing inspector for the City, and that he performed a plumbing inspection that revealed serious code violations at a City

---

[8] The City argues that Walker is precluded from raising the allegation concerning the *Sun-Times* article because the issue of the City attorney's reliance on the article was previously litigated before the Human Resources Board, which determined that the City attorney did not rely on the article, and that Walker had not suffered retaliation. The court declines to find that Walker is precluded from alleging retaliation here for the same reasons it declines to find that petitioner McGann's allegations are precluded, as discussed in Section I.C.3 within.

17

school. (Doc. 293 ¶¶ 1-2.) McGann further alleges that his supervisor, after receiving McGann's report on the violations, "attempted to quash" the report. (*Id.* ¶ 3.) Concerned, McGann allegedly sent his report to the school's principal, who in turn contacted the media. (*Id.* ¶ 4.) When news of the report went public, McGann was suspended (*id.* ¶ 6) but later "vindicated," first by a re-inspection of the school that led to a correction of the code violations and again by a ruling of the City's Human Resources Board on his suspension (*id.* ¶¶ 7-8). The City urges dismissal of McGann's petition on grounds of collateral estoppel and *res judicata*.

The City attaches the decision of the Human Resources Board which, the City contends, dooms McGann's claim on estoppel grounds. The decision finds, "The suspension at issue was not retaliation." (Doc. 304-4 at 4.) The underlying report of the hearing officer notes that McGann was represented by counsel in his hearing, and that he presented a defense of "retaliation." (*Id.* at 5, 8.) *Res judicata* applies if the previous adjudicative body reached a final judgment on the merits in a proceeding involving the same cause of action as that currently at issue and between the same parties or their privies. *See Garcia v. Village of Mount Prospect*, 360 F.3d 620, 634-35 (7th Cir. 2004). The Human Resources Board's decision appears to be adjudicative in nature and a final judgment on the merits, and concerns whether McGann suffered retaliation.

However, the court declines to find McGann's retaliation claim to be barred by *res judicata* at this stage for two reasons. First, while the court can take judicial notice of matters of public record in resolving a motion to dismiss, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), it is unclear whether the decisions of the City's Human Resources Board are public. Moreover, it is unclear how the City can use the decision

18

rendered by the Human Resources Board to estop claims against it in federal court. The City does not seek to explain whether the Human Resources Board is independent of the City or merely a City agency. The City cites two Seventh Circuit cases suggesting that it could have invoked claim preclusion in response to a federal court action regarding City ordinance violations because the federal court plaintiffs could have presented the same arguments as part of the "administrative process." *Schor v. City of Chicago*, 576 F.3d 775, 778 (7th Cir. 2009); *Idris v. City of Chicago*, 552 F.3d 564, 565 (7th Cir. 2009). However, neither decision specifies what process was afforded those plaintiffs or what degree of independence the administrative body had from the City. Therefore, while *res judicata* may preclude McGann's claims, the court cannot conclude as much at this stage.[9]

Nevertheless, McGann's amended petition must be dismissed. McGann seeks damages, including under the False Claims Act; as previously explained, petitioners' invocation of the False Claims Act is erroneous, and the MCD does not allow the recovery of damages. Since McGann seeks only money damages in this action and already has been reinstated, it is hard to imagine what relief, if any, this court can provide to him based on the MCD. However, McGann has stated an actionable claim, and if there is relief which this court can provide to him, he may re-plead in a manner consistent with this order and request such relief.

---

[9] The City also notes that McGann and Walker both could have appealed the determination of the Human Resources Board to the Illinois Circuit Court. The City cites no legal authority for this proposition and does not explain what effect their failure to appeal has on their claims here. The City contends that *Davis v. City of Chicago*, 53 F.3d 801 (7th Cir. 1995) is similar to this case. In *Davis*, the Seventh Circuit held that an Illinois Circuit Court's award of back pay on an employee's appeal from the Chicago Personnel Board precluded the employee's later suit pursuant to 42 U.S.C. § 1983 for missed overtime and other promotional opportunities. 53 F.3d at 802-03. However, McGann and Walker do not allege that they appealed the Human Resources Board's disposition of their claims to the Illinois Circuit Court, rendering *Davis* of unclear applicability to their amended petitions.

19

## II. CONCLUSION

For the reasons stated above, Swietczak's motions to reconsider are denied. The City's motion to dismiss is granted. Randazzo's, McGann's and Walker's amended petitions are dismissed without prejudice to their filing of independent actions. McGann and Walker are granted leave to re-plead, if they wish to do so, in a manner consistent with this opinion within 21 days.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: August 13, 2010