UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 75 C 3295 ) |
| CITY OF CHICAGO et al., | ) Honorable Joan B. Gottschall ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court is the City of Chicago's (the "City's") motion to dismiss the second amended petitions of Michael McGann and Charles Walker (hereinafter, the "petitioners"). For the reasons set forth below, the motion is granted.

**I.  BACKGROUND**

As the court previously explained:

> In 1974 and 1975, the American Civil Liberties Union ("ACLU") and other public interest groups brought two class actions arising from the City of Chicago (the "City") Police Department intelligence division's covert investigation of plaintiffs' purportedly subversive activities, which investigations, plaintiffs maintained, violated their First Amendment rights. The two cases, which were consolidated, resulted in the 1982 entry of a consent decree restricting the investigative techniques employed by the City, and granting the court jurisdiction to enforce compliance with the decree. *See Alliance to End Repression v. City of Chicago* (*Alliance 1982*), 561 F. Supp. 537 (N.D. Ill. 1982). Nearly twenty years later, after an appeal to the Seventh Circuit, *see Alliance to End Repression v. City of Chicago* (*Alliance 2001*), 237 F.3d 799 (7th Cir. 2001), this court entered a Modified Consent Decree ("MCD")[1] to replace the original consent decree. The MCD enjoined the City from, *inter alia*, retaliating against any person on the basis of conduct protected by the First Amendment. (MCD 3.) In June 2009, this court entered an order dissolving the MCD, but retaining jurisdiction "over all pending

---

[1]  The MCD is located at Doc. 3335 in *Alliance to End Repression et al. v. City of Chicago et al.*, No. 74 C 3268 (N.D. Ill. Mar. 23, 2001), with which this case has been consolidated.

> petitions to enforce" the MCD. (Doc. 253.) On July 31, 2009, the court issued an opinion (the "Opinion") on several such pending petitions brought by non-parties to the MCD. *See ACLU v. City of Chicago*, No. 75 C 3295, 2009 WL 2409907 (N.D. Ill. July 31, 2009); Doc. 271. The City challenged the standing of those non-parties to bring petitions to enforce the MCD; the court rejected this argument, finding that the MCD unambiguously conferred standing on "any person affected by the conduct complained of." *ACLU*, 2009 WL 2409907, at *3-*4 (quoting MCD) (emphasis in Opinion). To bring a valid petition, the court held, each such person must state a claim that the City retaliated against him for his exercise of his First Amendment rights in violation of the MCD. *Id.*, at *4. Of particular relevance here, the court . . . dismissed the petitions of . . . Charles Walker[] and Michael McGann without prejudice. *Id.*, at *5-*8.[2] . . . Pursuant to the court's instructions in the Opinion, . . . McGann[] and Walker . . . filed amended petitions (Docs. 292, 293, 294), which the City moved to dismiss (Doc. 304-2).

*ACLU v. City of Chi.*, No. 75 C 3295, 2010 WL 3273279, at *1 (N.D. Ill. Aug. 13, 2010).

McGann and Walker have since filed second amended petitions to enforce the MCD, in which they seek declaratory judgments, backpay, and other relief. (*See* ECF Nos. 322-23.) Walker alleges he was terminated from his position as a building inspector by the City of Chicago because of statements he made to a newspaper about building safety, a matter of public concern, that were subsequently published. McGann alleges he was suspended from his position as a plumbing inspector by the City of Chicago after making public statements about water quality at a public school. Both Walker and McGann had claims adjudicated before the Human Resources Board of the City of Chicago (the "Board") regarding the disciplinary actions taken by the City. In an October 16, 2007 opinion, the Board found that Walker's dismissal was based on grounds other than his protected speech and upheld his dismissal. In an April 14, 2009 opinion, the Board found that McGann's suspension was not retaliatory and that he was suspended for reasons other than his protected speech; however, the Board reversed his suspension because the

---

[2] For further history of this extensive case, *see ACLU v. City of Chi.*, No. 75 C 3295, 2008 WL 4450304, at *1-2 (N.D. Ill. Sept. 30, 2008) and *ACLU*, 2009 WL 2409907, at *1-2.

2

City did not prove by a preponderance of the evidence that McGann violated Personnel Rule XVIII by recording a disciplinary meeting.

In November 2010, the City moved to dismiss Walker's and McGann's second amended petitions on two bases: (1) the petitioners failed to state a claim upon which relief may be granted, and (2) the petitions are barred by the doctrines of res judicata and collateral estoppel.

## II. LEGAL STANDARD

Rule 12(b)(6) enables a defendant to seek dismissal of a complaint – here, the petitions are the complaints – that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must "tak[e] all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff," *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000)), or, in this case, in the light most favorable to the petitioners. Legal conclusions, however, are not entitled to any assumption of truth. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). To survive a Rule 12(b)(6) motion to dismiss, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary, a petitioner's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, the petitioners must provide enough factual allegations to state a claim for relief that is not only conceivable, but "plausible on its face." *Id.* at 555 & 570; *see Swanson v. Citibank, N.A.*, 614 F.3d 400, 403

3

(7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."). "A claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

### III.   ANALYSIS

**A.   Whether McGann's and Walker's petitions should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).**

The City argues that McGann's and Walker's petitions should be dismissed because, although each claims that he was fired because he exercised his right to free speech, neither alleged facts sufficient to suggest anything more than that each was fired after he exercised his right to free speech, and suspicious timing is not enough to enable to the court to draw the reasonable inference that the City retaliated against them based upon their speech.

A quick review of McGann's second amended complaint reveals that McGann has not alleged anything more than suspicious timing. Whether Walker has alleged anything more than suspicious timing is a slightly closer question, as he alleges that a City attorney admitted that Walker was fired as a result of his comments to a newspaper reporter. However, Walker includes these alleged admissions in his complaint and they do not support Walker's allegation that the attorney admitted as much. Nor do the alleged admissions otherwise give rise to the reasonable inference that the City retaliated against Walker because of his comments.

As the City correctly points out, the Seventh Circuit has held that "'[s]peculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation.'" *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). Accordingly, the City's argument proceeds as follows:

4

given that (1) to survive a motion to dismiss for failure to state a claim, the petitioners must provide sufficient factual support to state a claim that is plausible on its face, *Twombly*, 550 U.S. at 555 & 570, (2) "[a] claim has facial plausibility when the [petitioner] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 129 S. Ct. at 1949, and (3) the Seventh Circuit has held that it is not reasonable to infer retaliation from suspicious timing alone, *Burks*, 464 F.3d at 758, it follows that a petitioner must allege facts sufficient to show something more than mere suspicious timing to survive a motion to dismiss his/her claim that a defendant retaliated against him/her for his/her exercise of his/her right to free speech.

However, *Burks* is a case in which the Seventh Circuit affirmed the grant of a motion for summary judgment. *Burks*, 464 F.3d at 748. Holdings from cases decided at the summary judgment stage are generally inapplicable to a motion to dismiss since, by the time of summary judgment, the parties have had an opportunity to engage in discovery to identify the evidence that supports their claims; at the motion to dismiss stage, the parties have not had an opportunity to do so. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that "the legally relevant factors bearing upon" the court's decision "will be different on summary judgment than on [a] motion to dismiss;" "[a]t the earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized" whereas "[o]n summary judgment, . . . the plaintiff can no longer rest on the pleadings, see Fed. R[.] Civ. P[.] 56, and the court looks to the evidence before it . . . "). Accordingly, a holding about what it is reasonable to infer from the lack of certain evidence on summary judgment has little bearing on what reasonable inferences can be made from allegations in a complaint. *See*, *e.g.*, *City of N. Chi. v. Hanovnikian*, No. 06 C 0962, 2006 WL 1519578, at *3 (N.D. Ill. May 30, 2006) ("Three cases were decided on a motion for

5

summary judgment and are therefore inapplicable to a motion to dismiss." (citations omitted)), and *Ramos v. Town of Cicero*, No. 04 C 2502, 2005 WL 1838334, at *4 (N.D. Ill. July 28, 2005) ("The case cited by defendants in support of their argument . . . is inapposite; that case involved not a motion to dismiss but a summary judgment motion and thus went to the evidence . . . ."). In other words, the fact that the Seventh Circuit held that it is not reasonable to infer retaliation when the evidence the plaintiff has proffered suggests nothing more than suspicious timing, despite ample time for discovery, does not mean that a plaintiff who fails to allege anything more than suspicious timing will not be able to survive a motion to dismiss.[3] Accordingly, it is no surprise that the City fails to point to, and this court is not aware of, any cases in which a court relied upon this *Burks* holding when analyzing a motion to dismiss. The court declines to dismiss Walker's and McGann's second amended petitions on this basis.

**B.     Whether Collateral Estoppel Bars McGann's and Walker's Petitions.**

The City also argues that this court is barred by collateral estoppel from ruling on the issues presented in McGann's and Walker's petitions because the Board already ruled on the same facts at issue here. The court agrees.

When an administrative agency "'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,'" federal courts must give the same preclusive effect to the agency's factfinding as the factfinding would

---

[3]     Indeed, plaintiffs (and petitioners) might find it hard to proceed on certain claims if they needed to plead specifics about facts known only to the defendant. *See, e.g.*, *Mitchell v. Township of Pemberton*, No. 09-810 (NLH)(AMD), 2010 WL 2540466, at *6 (D.N.J. June 17, 2010) ("[I]nformation concerning a town's customs or policies, the policymakers' motivations behind such policies, or the facts surrounding police department customs, are typically unavailable to an outsider, so that pleading facts to sufficiently advance a racial profiling claim may be impossible without some assistance through litigation tools such as request for admissions, interrogatories, document requests, and depositions."); *Warren v. Briggs*, No. 08-1172, 2009 WL 174996, at *5 (C.D. Ill. Jan. 21, 2009) (declining to dismiss a *Monell* claim premised on an alleged widespread practice although the defendants argued that the plaintiff had alleged only one isolated incident since "[w]ithout the benefit of discovery, it is hard to see what more Plaintiff could allege to state a claim for an unconstitutional city policy").

6

be entitled to in a state court. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (quoting *United States v. Utah Const. & Mining Co.*, 384 U.S. 394, 422 (1966)). Under Illinois law, collateral estoppel applies and further litigation of an issue is prohibited when "(1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case." *People v. Tenner*, 794 N.E.2d 238, 247 (Ill. 2002) (citing *People v. Franklin*, 656 N.E.2d 750, 754 (Ill. 1995)). Administrative decisions have collateral estoppel effect in Illinois where "a department's determination is made in proceedings that are adjudicatory, judicial, or quasi-judicial in nature." *Ill. Health Maint. Org. Guar. Ass'n v. Dep't of Ins.*, 864 N.E.2d 798, 809-10 (Ill. App. Ct. 2007) (citing *John O. Schofield, Inc. v. Nikkel*, 731 N.E.2d 915, 924 (Ill. App. Ct. 2000); *Bagnola v. SmithKline Beecham Clinical Labs.*, 776 N.E.2d 730, 735 (Ill. App. Ct. 2002)); *see also Wenig v. Lockheed Envtl. Sys. & Techs. Co.*, 726 N.E.2d 645, 648 (Ill. App. Ct. 2000) ("'[W]hen an agency conducts a trial-type hearing, makes findings, and applies the law, the reasons for treating a decision as res judicata are the same as the reasons for applying res judicata to a decision of a court that has used the same procedure.'" (quoting *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997)).

  The City points to *Casanova v. City of Chicago*, 793 N.E.2d 907, 916 (Ill. App. Ct. 2003), to support its contention that Illinois courts give preclusive effect to administrative adjudication factfinding. In *Casanova*, the Appellate Court of Illinois held that collateral estoppel prevented a plaintiff from pursuing an unfair labor claim against the City because prior proceedings before the Illinois Labor Relations Board were "judicial in nature" and resulted in a final written decision, subsequently upheld by the Appellate Court, in a case brought by the same plaintiff on an identical issue. 793 N.E.2d at 916. Like the proceedings in *Casanova*, the

7

proceedings regarding McGann and Walker before the Board were judicial, resulting in written opinions explaining the Board's findings in detail. (*See* City's Mot. to Dismiss Exs. 1 ¶¶ 1–12, 2 at 6, ECF No. 326.) The petitioners are the same parties who litigated before the Board; they ask the court to resolve the same question (whether retaliation was the basis for the petitioners' discipline) that the Board decided in the City's favor in the prior proceedings. (*See* City's Mot. to Dismiss Exs. 1 ¶ 11, 2 at 6, ECF No. 326.) While the petitioners' prior proceedings were not appealed to a state court, as were the proceedings in *Casanova*, it remains "sound policy to apply principles of issue preclusion to the factfinding of administrative bodies acting in a judicial capacity." *Univ. of Tenn.*, 478 U.S. at 797.

The petitioners cite a series of Title VII cases for the notion that preclusion doctrines should not prevent the court from hearing their retaliation claims. *See, e.g.*, *Univ. of Tenn.*, 478 U.S. at 796; *Kremer v. Chem. Const. Corp.*, 456 U.S. 461 (1982); *Batiste v. Furnco Const. Corp.*, 503 F.2d 447, 450, n.1 (7th Cir. 1974). While the Supreme Court has held that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims," the Court distinguished Title VII claims from § 1983 claims, holding that Congress did not intend § 1983 to contravene normal preclusion doctrines. *Univ. of Tenn.*, 478 U.S. at 796-97; *see also Buckhalter v. Pepsi-Cola Gen. Bottlers, Inc.*, 820 F.2d 892, 897 (7th Cir. 1987) ("The common-law doctrine of preclusion bars Buckhalter from relitigating his civil right claims concerning his alleged racially motivated discharge in federal court. From our review of the record and relevant case law, we have discovered no evidence that Congress intended that persons who contest the decision on their § 1981 claim reached after thorough administrative agency hearings are entitled to a trial *de novo* in the federal courts. Where the HRC has acted in a judicial capacity to resolve disputed issues of fact properly before it and the claimant has been

provided with an adequate opportunity to litigate the civil rights issues to their proper conclusion and judgment, he is barred from relitigating the § 1981 claim in federal court."). This court has previously found that claims under the consent decree are more analogous to § 1983 claims than Title VII claims,[4] and adheres to that view here. Accordingly, normal preclusion principles apply, and the court is collaterally estopped from considering McGann's and Walker's allegations that the City's disciplinary actions were impermissibly based on protected speech.

Walker and McGann also cite the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Kan. City S. Ry. Co. v. Koeller*, --- F.3d ----, No. 10-2333, 2011 WL 3132278, at *6 (7th Cir. July 27, 2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 248 (2005), and citing *Skinner v. Switzer*, --- U.S. ----, 131 S.Ct. 1289, 1297 (2011), *Lance v. Dennis*, 546 U.S. 459, 464 (2006), and *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 431-32 (7th Cir. 2009)). The doctrine "has no application to judicial review of . . . determinations made by a state administrative agency." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002). The *Rooker-Feldman* doctrine informs determinations of jurisdiction – not preclusion, on which the City's motion to dismiss is grounded. The doctrine is thus irrelevant to the court's decision.

---

[4] *See ACLU v. City of Chi.*, No. 75 C 3295, 2010 U.S. Dist. LEXIS 84798, at *17-18 (N.D. Ill. Aug. 13, 2010) ("This court has previously analogized claims under the consent decree to § 1983 claims, but it also has noted that 'the fit is not perfect.'" (quoting *Alliance to End Repression v. City of Chi.*, Nos. 74 C 3268, 75 C 3295, 2000 WL 1368004, at *2 (N.D. Ill. Sept. 20, 2000))). Indeed, it is clear that the petitioner's claims would not fall under Title VII, which only prohibits discrimination based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (2006 & Supp. III 2009). Rather, "[c]laims of retaliatory discharge based on the first amendment are commonly asserted in § 1983 actions." *Greenwood v. Ross*, 778 F.2d 448, 456 (8th Cir. 1985) (citing *Connick v. Myers*, 461 U.S. 138, 144 (1983); *Henderson v. Huecker*, 744 F.2d 640, 643 (8th Cir. 1984); *Brockell v. Norton*, 732 F.2d 664, 666 (8th Cir. 1984); *Derrickson v. Bd. of Educ.*, 703 F.2d 309, 316-17 (8th Cir. 1983)). That McGann alleges that he was suspended – and not discharged – in retaliation for his speech does not change the analysis.

## IV. CONCLUSION

For the reasons stated above, the City's motion to dismiss McGann's and Walker's second amended petitions is granted.

ENTER:

                                                  /s/
                                 JOAN B. GOTTSCHALL
                                 United States District Judge

DATED: September 23, 2011